[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-10636

_____

Agency No. A072-565-851

PANKAJKUMAR S. PATEL,
JYOTSNABEN P. PATEL,
NISHANTKUMAR PATEL,

Petitioners,

versus

UNITED STATES ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 19, 2020)

Before WILLIAM PRYOR, Chief Judge, WILSON, MARTIN, JORDAN,

ROSENBAUM, JILL PRYOR, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, TJOFLAT, ED CARNES, and MARCUS, Circuit Judges.[*]

TJOFLAT, Circuit Judge, delivered the opinion of the Court, in which WILLIAM PRYOR, Chief Judge, NEWSOM, BRANCH, GRANT, LUCK, LAGOA, ED CARNES, and MARCUS, Circuit Judges, joined.

TJOFLAT, Circuit Judge:

Pankajkumar Patel seeks review of a final order of removal from the Board of Immigration Appeals ("BIA"). Patel sought discretionary relief under 8 U.S.C. § 1255(i), which permits an alien who entered without inspection to obtain relief from removal if, among other things, the alien is the beneficiary of a labor certification. The BIA determined that Patel was ineligible for such relief because he falsely represented himself as a citizen for a benefit when he applied for a Georgia driver's license. *See* 8 U.S.C. § 1182(a)(6)(C)(ii)(I). Patel now petitions, asking us to resolve two questions. First, he argues that, as a factual matter, he did not falsely represent himself as a citizen because he merely checked the wrong box on the license application form. Second, Patel argues that his misrepresentation

---

[*] Judges Gerald Bard Tjoflat, Stanley Marcus, and Ed Carnes were members of the en banc Court that heard oral argument in this case. Judges Tjoflat and Marcus took senior status on November 19, 2019 and December 6, 2019, respectively, and both have elected to participate in this decision pursuant to 28 U.S.C. § 46(c)(1). Judge Ed Carnes took senior status on June 30, 2020 and has elected to participate in this decision pursuant to 28 U.S.C. § 46(c)(2). Judge Andrew L. Brasher joined the Court on June 30, 2020 and did not participate in this en banc proceeding.

2

was not material because the benefit, a Georgia driver's license, is available to non-citizens.

This case requires us to determine the scope of a jurisdiction-stripping provision in the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(2)(B). That provision provides that "no court shall have jurisdiction to review" "any judgment regarding the granting of relief" for certain enumerated categories of discretionary relief. 8 U.S.C. § 1252(a)(2)(B)(i). Section 1255, the relief for which Patel applied, is one of the enumerated categories in § 1252(a)(2)(B)(i).

In our first published opinion to interpret § 1252(a)(2)(B)(i), we drew a distinction between "appellate review of discretionary decisions" and "review of non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief." *Gonzalez-Oropeza v. U.S. Attorney General*, 321 F.3d 1331, 1332 (11th Cir. 2003). Since then, we have held in numerous cases that we lack jurisdiction to review discretionary determinations underlying discretionary relief, while we retain jurisdiction to review non-discretionary decisions underlying that relief. The problem: that interpretation is based on the predecessor version of § 1252(a)(2)(B) and is unmoored from the current statutory language. Today, we overrule such precedent, holding that we are precluded from reviewing "any judgment regarding the granting of relief under [8 U.S.C §§] 1182(h), 1182(i),

3

1229b, 1229c, or 1255" except to the extent that such review involves constitutional claims or questions of law. *See* 8 U.S.C. §§ 1252(a)(2)(B)(i) & (D).

Patel's petition presents both a factual challenge and a question of law. We hold that § 1252(a)(2)(B)(i) precludes our review of the factual challenge. We retain jurisdiction to review the question of law related to whether a Georgia driver's license is a material benefit.

## I.

Patel is a citizen of India who entered the United States without inspection. In 2012, the Department of Homeland Security issued a notice to appear to Patel charging him as removable for being present in the United States without inspection. In a subsequent removal proceeding before an immigration judge, Patel conceded that he was removable, but he sought discretionary relief from removal by applying for adjustment of status under 8 U.S.C. § 1255(i). Section 1255 permits an alien who entered without inspection to obtain relief from removal if, among other things, the alien is the beneficiary of a labor certification. *See* § 1255(i)(1)(B)(ii).[1]

---

[1] 8 U.S.C. § 1255(i)(1) provides:

(1) Notwithstanding the provisions of subsections (a) and (c) of this section, an alien physically present in the United States--

(A) who--

Patel qualified to apply for relief pursuant to § 1255(i) as he had an approved I-140 employment authorization document.[2]

The Attorney General may adjust an alien's status to that of a lawful permanent resident if the alien meets certain requirements. *See* § 1255(i); *see also* 8 C.F.R. § 1245.10(b) (listing the eligibility requirements for an alien who entered without inspection and is seeking adjustment of status based on a labor certification). The parties agree that Patel meets all the statutory criteria for adjustment of status except one: the applicant must show "clearly and beyond doubt" that he is not inadmissible. *See* 8 U.S.C. § 1229a(c)(2) (in a removal

---

(i) entered the United States without inspection; or

(ii) is within one of the classes enumerated in subsection (c) of this section;

(B) who is the beneficiary (including a spouse or child of the principal alien, if eligible to receive a visa under section 1153(d) of this title) of--

(i) a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001; or

(ii) an application for a labor certification under section 1182(a)(5)(A) of this title that was filed pursuant to the regulations of the Secretary of Labor on or before such date; and

(C) who, in the case of a beneficiary of a petition for classification, or an application for labor certification, described in subparagraph (B) that was filed after January 14, 1998, is physically present in the United States on December 21, 2000;

may apply to the Attorney General for the adjustment of his or her status to that of an alien lawfully admitted for permanent residence.

[2] Patel's wife, Jyotsnaben Patel, and son, Nishantkumar Patel, are also parties to this appeal. They too are subject to removal for entering the country without inspection. They are seeking adjustment of status as derivative beneficiaries of Patel's labor certification. *See* § 1255(i)(1)(B). As Patel is the lead respondent, and the outcome of all three petitions for relief depends on his case, we focus solely on Patel for the convenience of the reader.

5

proceeding, an alien applying for admission "has the burden of establishing . . .

that the alien is clearly and beyond doubt entitled to be admitted and is not

inadmissible").

Patel's admissibility is in doubt because he falsely represented that he was a

U.S. citizen when he applied for a Georgia driver's license in 2008.  When

applying for the license, Patel checked a box indicating that he is a U.S. citizen.

This incident arguably renders Patel inadmissible pursuant to 8 U.S.C.

§ 1182(a)(6)(C)(ii)(I), which says:

> Any alien who falsely represents, or has falsely represented, himself
> or herself to be a citizen of the United States for any purpose or
> benefit under this chapter (including section 1324a of this title) or any
> other Federal or State law is inadmissible.

The BIA has interpreted this section to require three elements: (1) a false

representation of citizenship, (2) that is material to a purpose or benefit under the

law, (3) with the subjective intent of obtaining the purpose or benefit.  *Matter of*

*Richmond*, 26 I. & N. Dec. 779, 786–87 (B.I.A. 2016).

There was no dispute that Patel made a false representation of citizenship.

Nor was there any dispute that a driver's license is a benefit under state law.  Patel

challenged the applicability of the statute on two grounds: (1) he lacked the

requisite subjective intent to falsely represent himself as a citizen, and (2) the false

representation was not material.

6

At the removal hearing, Patel argued that he did not have the requisite subjective intent because he simply made a mistake. To prove that it was a mistake, Patel claimed that he provided his alien registration number and his employment authorization card to the Georgia Department of Motor Vehicles with his driver's license application. Patel argued that it would have made no sense to document his non-citizen status if his goal were to pose as a citizen. Patel also argued that a false representation of citizenship was not material to obtaining a driver's license because an alien is eligible to receive a driver's license from Georgia. As proof, Patel observed that he had previously received a license from Georgia.

The Immigration Judge rejected Patel's arguments. The Immigration Judge determined that Patel was not credible. He was evasive when testifying and would not explain to the Court exactly how he had made a mistake. Furthermore, the Immigration Judge examined the application and determined that Patel did not write his alien registration number on the application. The application asks about citizenship and directs the applicant to provide his alien registration number if he is not a citizen. Patel marked that he was a citizen and did not write down his alien registration number. The application also does not reflect that Patel provided his employment authorization card. In the section on the form where the Georgia official is to list the documents accepted, the only document mentioned is Patel's

7

prior Georgia driver's license.  In short, the evidence contradicted Patel's testimony, which the Immigration Judge already suspected was not candid, so the Immigration Judge did not believe Patel's claim that he made a mistake.  The Immigration Judge found that Patel willfully and purposefully indicated that he was a U.S. citizen.

The Immigration Judge also held that Patel failed to prove that his false representation was immaterial because he failed to meet his burden of proving that he was otherwise eligible for a driver's license.  The fact that Patel had previously obtained a license in Georgia is inconclusive because Patel might have misrepresented his citizenship on his past application too.  Alternatively, even if Patel obtained his prior license without claiming citizenship, the rules governing who qualifies for a license in Georgia could have changed in the interim.  Patel simply did not provide enough evidence to show that he was otherwise eligible for the license.[3]

---

[3] To prove his theory, Patel asked the Immigration Judge to take judicial notice of Georgia law.  The Immigration Judge refused.  Federal courts, however, must take judicial notice of state law.  *See Lamar v. Micou*, 114 U.S. 218, 223, 5 S. Ct. 857, 859 (1885) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof.").

Because Patel failed to show that he was not inadmissible, the Immigration Judge denied his application for adjustment of status and ordered the Patels removed.

The BIA affirmed.  It found no clear error in the factual finding that Patel was not credible and made the false representation with the subjective intent to obtain a license.  The BIA also agreed that Patel did not produce enough evidence to prove that he was otherwise eligible for a license—i.e., to prove that the false representation was immaterial.

One BIA member dissented.  She observed that Georgia law extended driver's licenses to those with lawful status.  *See* Ga. Comp. R. & Regs. 375-3-1.02(6) ("Each customer must provide documentation of his or her citizenship *or lawful status* in the United States." (emphasis added)).  And an alien with "a pending application for lawful permanent residence" has lawful status for the purpose of a driver's license application.  6 C.F.R. § 37.3.  Since Patel had a pending application for lawful permanent residence when he applied for the Georgia license, he did not need citizenship to obtain the license.  Thus, the dissenting BIA member reasoned, the false representation was immaterial.

Patel now seeks review of the BIA's decision.  A panel of this Court held that under § 1252(a)(2)(B)(i) it lacked jurisdiction to review whether Patel, as a

9

factual matter, had the requisite subjective intent to misrepresent his citizenship status. *Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1322 (11th Cir.), *reh'g en banc granted*, *opinion vacated*, 786 F. App'x 1005 (11th Cir. 2019). The panel also determined that it had jurisdiction to review Patel's legal challenge and determined that the provision on which the BIA found Patel inadmissible, § 1182(a)(6)(C)(ii)(I), does not contain a materiality element. *Id.* We granted rehearing en banc to resolve the first of these issues—whether this Court has jurisdiction to review the factual findings underlying the BIA's determination that Patel had the subjective intent to misrepresent his citizenship status. In doing so, we must interpret 8 U.S.C. § 1252(a)(2)(B)(i).

## II.

To understand the limitations of 8 U.S.C. § 1252(a)(2)(B)(i), one must understand the underlying immigration scheme. This section first provides a quick primer on the background of relief from removal and then outlines the history of judicial review on removal proceedings.

## A.

Congress has "plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden." *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S. Ct. 2576, 2583 (1972) (quoting *Boutilier v. INS*, 387 U.S. 118, 123, 87 S. Ct. 1563, 1567 (1967)). Since 1875,

10

Congress has placed restrictions on who can enter and remain in the United States.

*Id.*

Prior to 1940, the Executive Branch enforced these restrictions but had no

authority to grant discretionary relief for removable aliens.  *Foti v. INS*, 375 U.S.

217, 222, 84 S. Ct. 306, 310 (1963).[4]  A determination that an alien was removable

"necessarily resulted in, and was invariably accompanied by, a deportation order."

*Id.*  Extenuating circumstances had to be presented via a private bill in Congress.

*Id.*; *see also INS v. Jong Ha Wang*, 450 U.S. 139, 140 n.1, 101 S. Ct. 1027, 1029

n.1 (1981).  The only other route to relief for aliens who had been ordered deported

was via a writ of habeas corpus.  *INS v. St. Cyr*, 533 U.S. 289, 306, 121 S. Ct.

2271, 2282 (2001).

With the passage of the Alien Registration Act of 1940, Congress gave the

Attorney General some discretion to allow for voluntary departure or to suspend

deportation for aliens of "good moral character whose deportation 'would result in

---

[4] Some have pointed out that the Executive Branch "did have some very limited executive discretion before 1940 through the Seventh Proviso of the Immigration Act of 1917," which provided that "aliens returning after a temporary absence to an unrelinquished United States domicile of seven consecutive years may be admitted in the discretion of the Attorney General and under such conditions as he may prescribe."  Kati L. Griffith, *Perfecting Public Immigration Legislation: Private Immigration Bills and Deportable Lawful Permanent Residents*, 18 Geo. Immigr. L.J. 273, 304 (2004) (quoting Immigration Act of 1917, Pub. L. No. 301, 39 Stat. 874 (1917) (codified as amended at 8 U.S.C. § 156 (1917)) (repealed 1952)).  Although the Seventh Provisio applied "literally only to exclusion proceedings," it was used as a nunc pro tunc correction of the record of reentry to suspend deportations in some removal proceedings.  *Id.* (citing *St. Cyr*, 533 U.S. at 289, 121 S. Ct. at 2282).

serious economic detriment' to the aliens or their families." *INS v. Phinpathya*, 464 U.S. 183, 190, 104 S. Ct. 584, 589 (1984) (quoting the Alien Registration Act of 1940, Pub. L. No. 76-670, § 20, 54 Stat. 670, 672).[5]  In 1948, Congress amended the statute to make suspension available for "aliens who 'resided continuously in the United States for seven years or more' and who could show good moral character for the preceding five years, regardless of family ties." *Id.* (quoting Act of July 1, 1948, ch. 783, 62 Stat. 1206).

In 1952, Congress enacted a comprehensive immigration scheme, the Immigration and Nationality Act ("INA"), which set out "the terms and conditions of admission to the country and the subsequent treatment of aliens lawfully in the country." *Chamber of Commerce v. Whiting*, 563 U.S. 582, 587, 131 S. Ct. 1968, 1973 (2011) (plurality opinion) (quoting *De Canas v. Bica*, 424 U.S. 351, 353, 359, 96 S. Ct. 933, 938 (1976)).  Included in that act were multiple categories of relief that the Attorney General could grant, to certain eligible recipients, *in his*

---

[5] The Alien Registration Act allowed the Attorney General to suspend deportation "[i]n the case of any alien . . . who is deportable under any law of the United States and who has proved good moral character for the preceding five years" if "[the Attorney General] finds that such deportation would result in serious economic detriment to a citizen or legally resident alien who is the spouse, parent, or minor child of such deportable alien."  § 20, 54 Stat. at 671–72.  However, if the Attorney General suspended deportation for more than six months, it was subject to review by Congress.  *Id.* § 20, 54 Stat. at 672.

*discretion*.  *See* INA, Pub. L. No. 82-414, 66 Stat. 163 (1952); *see also St. Cyr*, 533 U.S. at 295, 121 S. Ct. at 2276 (interpreting INA § 212(c)).

In its most recent iteration, the INA includes many types of relief that are deemed discretionary rather than mandatory.  Patel seeks a form of discretionary relief under 8 U.S.C. § 1255, which allows aliens to apply for adjustment of status to a lawful permanent resident.  Other types of discretionary relief include readmission of immigrants in the United States, § 1181, cancellation of removal, § 1229b, and voluntary departure, § 1229c.

Through these provisions, "Congress made a deliberate choice to delegate to the Executive Branch, and specifically to the Attorney General, the authority to allow deportable aliens to remain in this country in certain specified circumstances."  *INS v. Chadha*, 462 U.S. 919, 954, 103 S. Ct. 2764, 2786 (1983). The Attorney General can establish regulations, review administrative determinations,[6] delegate his authority, and perform other such acts as he deems necessary to effectuate his authority to grant discretionary relief.  8 U.S.C.

---

[6] While the Attorney General can review decisions of the BIA, he cannot dictate the actions of the BIA.  *See* 8 U.S.C. §§ 1003.1(d)(7) & (h); *Marcello v. Bonds*, 349 U.S. 302, 311, 75 S. Ct. 757, 762 (1955) ("[T]he Attorney General cannot, under present regulations, dictate the actions of the Board of Immigration Appeals."); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267, 74 S. Ct. 499, 503 (1954) ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep the Board or dictate its decision in any manner.").

§§ 1103(g)(1) & (2).  Pursuant to those directives, the Attorney General and the Secretary of Homeland Security have promulgated regulations interpreting the INA.  *See* 8 C.F.R. §§ 100–507.  In addition, the Attorney General delegated his authority to determine removability to the Executive Office of Immigration Review, which includes the immigration courts and the BIA.[7]  *See* 6 U.S.C. § 521 (establishing the EOIR); 8 U.S.C. § 1103 (Attorney General has control of the EOIR); 8 C.F.R. § 1003.0 (listing the offices that encompass the EOIR).

The discretion delegated to the Attorney General, and in turn to the immigration courts, to grant ultimate relief for otherwise removable aliens has been likened to "probation or suspension of criminal sentence," that is, it functions as "an act of grace."  *Jay v. Boyd*, 351 U.S. 345, 354, 76 S. Ct. 919, 924 (1956) (quoting *Escoe v. Zerbst*, 295 U.S. 490, 492, 55 S. Ct. 818, 819 (1935)).  Aliens are not entitled to the relief as a matter of right.  *Id.*  They are, however, given a right

---

[7] Certain responsibilities under the INA were also delegated to the Immigration and Naturalization Service ("INS").  *Jaramillo v. INS.*, 1 F.3d 1149, 1151 (11th Cir. 1993) (en banc). In 2003, Congress abolished the INS and transferred its functions to three agencies within the newly formed Department of Homeland Security: U.S. Citizenship and Immigration Services, U.S. Customs and Border Protection, and U.S. Immigration and Customs Enforcement.  *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 441, 451, 471, 116 Stat. 2135, 2192, 2195–97, 2205.  Thus, Congress has delegated the authority to administer and enforce immigration and naturalization laws to both the Secretary of Homeland Security and the Attorney General.  *See* 8 U.S.C. § 1103.

Since Patel's petition arises in the removal context, we focus on that avenue rather than on prosecutorial discretion to grant relief.

to a ruling on such relief.[8]  *Id.*  Applicants who do not meet the threshold statutory requirements are ineligible for consideration of discretionary relief.  Applicants who meet the threshold requirements are eligible for a favorable exercise of discretion but are not entitled to it as a matter of right.  *Id.*; *see also Barton v. Barr*, 140 S. Ct. 1442, 1445 (2020) ("If a lawful permanent resident meets those eligibility requirements, the immigration judge has discretion to (but is not required to) cancel removal and allow the lawful permanent resident to remain in the United States.").

Even if an alien is eligible for relief, an immigration judge can still decide— for any number of reasons—that a favorable exercise of discretion is not warranted.  "[E]ligibility in no way limits the considerations that may guide the Attorney General in exercising her discretion to determine who, among those eligible, will be accorded grace."  *INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31, 117 S. Ct. 350, 353 (1996).  For example, the Attorney General can promulgate regulations that allow immigration judges to consider "confidential information" in their assessment.  *See Jay*, 351 U.S. at 349–50, 76 S. Ct. at 922 (upholding the immigration judge's determination that although the applicant "met the statutory

---

[8] Depending on the applicable regulations, an alien may or may not be entitled to a ruling on whether certain eligibility requirements are met.  *INS v. Rios-Pineda*, 471 U.S. 444, 449, 105 S. Ct. 2098, 2102 (1985) ("[I]f the Attorney General decides that relief should be denied as a matter of discretion, he need not consider whether the threshold statutory eligibility requirements are met." (citing *INS v. Bagamasbad*, 429 U.S. 24, 26, 97 S. Ct. 200, 201 (1976))).

prerequisites [for] the favorable exercise of the discretionary relief," favorable action was not warranted in light of certain "confidential information").[9]

Alternatively, based on the circumstances presented, immigration judges can make case-by-case determinations that a favorable exercise of discretion is not warranted. In *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77, 77 S. Ct. 618, 621 (1957), the Supreme Court upheld the BIA's determination that, even though "deportation . . . would result in a serious economic detriment to an American citizen infant child," discretionary relief was not warranted because the applicants waited to apply for relief until after their son was born and had no other close family ties in the United States.[10] *Id.* at 75–76, 77 S. Ct. at 620 (quoting the eligibility requirement of § 19(c) of the Immigration Act of 1917). The Supreme Court has stated that, in exercising their discretion, immigration judges can consider the "flagrancy and nature of [aliens'] violations" of immigration laws,

_____

[9] The special inquiry officer and the BIA considered certain confidential information pursuant to then-8 C.F.R. § 244.3, which provided, "In the case of an alien qualified for * * * suspension of deportation under section * * * 244 of the Immigration and Nationality Act the determination as to whether the application for * * * suspension of deportation shall be granted or denied (whether such determination is made initially or on appeal) may be predicated upon confidential information without the disclosure thereof to the applicant, if in the opinion of the officer or the Board making the determination the disclosure of such information would be prejudicial to the public interest, safety, or security." *Jay*, 351 U.S. at 347–48, 76 S. Ct. at 921. Current regulations allow immigration judges to consider confidential information to determine the admissibility of arriving aliens. *See* 8 C.F.R. § 235.8.

[10] The Court held that it was not error for the BIA "to take cognizance of present-day conditions and congressional attitudes" by looking to the policy reasons underlying the enactment of the 1952 INA in exercising its discretion. *Hintopoulos*, 353 U.S. at 78, 77 S. Ct. at 622.

*Rios-Pineda*, 471 U.S. at 451, 105 S. Ct. at 2103, as well as the egregiousness of an alien's unconnected entry fraud, *Yueh-Shaio Yang*, 519 U.S. at 31, 117 S. Ct. at 353. Immigration judges, however, have no discretion to disregard the statutory eligibility requirements to grant relief for an ineligible alien. *Jay*, 351 U.S. at 349, 76 S. Ct. at 922.

Over time, with the increase of regulations interpreting the INA as well as precedential BIA decisions that "provide clear and uniform guidance to . . . immigration judges . . . on the proper interpretation and administration of the Act and its implementing regulations," 8 C.F.R. § 1003.1(d)(1), the scope of an individual immigration judge's discretion to grant relief has narrowed. As the Supreme Court has said, "[t]hough the agency's discretion is unfettered at the outset, if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy (as opposed to an avowed alteration of it) could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion.'" *Yueh-Shaio Yang*, 519 U.S. at 32, 117 S. Ct. at 353 (quoting 5 U.S.C. § 706(2)(A)). This Circuit has likewise recognized that promulgation of regulations "could limit the Attorney General's discretion in ways that make the . . . determination effectively nondiscretionary." *Bedoya-Melendez v. U.S. Att'y Gen.*, 680 F.3d 1321, 1326 (11th Cir. 2012).

17

Still, in seeking relief, an alien has the burden of establishing that he (i) "satisfies the applicable eligibility requirements"; and (ii) "with respect to any form of relief that is granted in the exercise of discretion, that the alien merits a favorable exercise of discretion." 8 U.S.C. § 1229a(c)(4)(A). In applying for admission, the alien must show "clearly and beyond doubt" that he "is not inadmissible under section 1182." *Id.* § 1229a(c)(2)(A). If an immigration judge determines that an alien is removable and orders that the alien be removed, the judge shall inform the alien of the right to appeal to the BIA and the consequences for failure to depart. *Id.* § 1229a(c)(4)(C).

The BIA reviews an immigration judge's findings of fact for clear error and reviews "questions of law, discretion, and judgment and all other issues" de novo. 8 C.F.R. § 1003.1(d)(3). If an alien seeks to appeal the BIA's final order of removal, he shall file a petition for review with the court of appeals for the judicial circuit in which the immigration proceedings took place. 8 U.S.C. § 1252(b).

B.

Now, 8 U.S.C. § 1252 streamlines judicial review in the Courts of Appeals and imposes certain limits on the scope of that review. We outline the statutory changes that lead to the current scheme.

18

Before 1952, "the sole means by which an alien could test the legality of his or her deportation order was by bringing a habeas corpus action in district court." *St. Cyr*, 533 U.S. at 306, 121 S. Ct. at 2282; *see also Heikkila v. Barber*, 345 U.S. 229, 230, 73 S. Ct. 603, 604 (1953). Courts consistently rejected attempts to use other types of relief to challenge deportation orders, recognizing that "Congress had intended to make these administrative decisions nonreviewable to the fullest extent possible under the Constitution." *Heikkila*, 345 U.S. at 234, 73 S. Ct. at 605. Specifically, the Immigration Act of 1917 stated that deportation orders of the Attorney General should be "final," and the Supreme Court interpreted that language to preclude judicial review except by habeas corpus. *Id.*; *see also Shaughnessy v. Pedreiro*, 349 U.S. 48, 52, 75 S. Ct. 591, 594 (1955).

Like the Immigration Act of 1917, the INA of 1952 used language that deportation orders should be "final." *Pedreiro*, 349 U.S. at 52, 75 S. Ct. at 594. However, in 1955, the Supreme Court was forced to reconcile its previous interpretation of this language with the right of review provided by the Administrative Procedure Act (the "APA").[11] *Id.* The Court concluded that the finality language in the 1952 INA was ambiguous and could not be read as

---

[11] Congress enacted the APA in 1946. Section 10 of the APA provides a right of review for "final agency action[s]" except so far as (1) "statutes preclude judicial review" or (2) the action is, by law, committed to agency discretion. Administrative Procedure Act, Pub. L. No. 79-404, § 10, 60 Stat. 237, 243 (1946).

foreclosing judicial review, especially given the purposes of the APA. *Id.* Hence, the lack of explicit judicial review limitations in the INA of 1952 opened other pathways for aliens to obtain judicial review of deportation orders. *Id.*; *St. Cyr*, 533 U.S. at 306, 121 S. Ct. at 2282.

That period of full judicial review was short lived, curtailed by amendments made to the INA in 1961. *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, 75 Stat. 650. The 1961 Act withdrew jurisdiction from the district courts and consolidated review in the courts of appeals. *St. Cyr*, 533 U.S. at 306 n.26, 121 S. Ct. at 2282 n.26; *Foti*, 375 U.S. at 225, 84 S. Ct. at 312. "[T]he plain objective of [§] 106(a) was 'to create a single, separate, statutory form of judicial review of administrative orders for the deportation of . . . aliens.'" *Foti*, 375 U.S. at 225, 84 S. Ct. at 312. Section 106(a) of the 1961 Act provided the "sole and exclusive procedure for, the judicial review of all final orders of deportation," which included determinations related to discretionary relief. *Id.* at 221, 84 S. Ct. at 310 (quoting 75 Stat. at 651). It was implemented for the express purpose of "abbreviat[ing] the process of judicial review of deportation orders" and preventing "dilatory tactics in the courts." *Id.* at 224, 84 S. Ct. at 311.

In 1996, Congress amended the INA with the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), Pub. L. No. 104-208, § 309, 110 Stat. 3009-626 (1996). The IIRIRA made significant revisions to federal immigration

law.  One major change was in terminology; "Congress abolished the distinction between exclusion and deportation procedures and created a uniform proceeding known as 'removal.'"  *Vartelas v. Holder*, 566 U.S. 257, 262, 132 S. Ct. 1479, 1484 (2012).  Another change was to significantly revise the judicial-review scheme.  *See Calcano-Martinez v. INS*, 533 U.S. 348, 350, 121 S. Ct. 2268, 2269 (2001); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 475, 119 S. Ct. 936, 940 (1999).

The IIRIRA included permanent rules that would go into effect on April 1, 1997, as well as temporary rules that applied during the transition period.  *See* Pub. L. No. 104-208, § 309, 110 Stat. at 3009-626.  The transitional rules provided that "there shall be no appeal of any discretionary decision under section 212(c), 212(h), 212(i), 244, or 245 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act)."[12]  *Id.* § 309(b)(4)(E).  The permanent rules set up the current judicial-review structure providing that, "Notwithstanding any other provision of law, no court shall have jurisdiction to review" "(i) any judgment regarding the granting of relief under section 212(h), 212(i), 240A, 240B, or 245, or" "(ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the

---

[12] These sections correspond to 8 U.S.C. §§ 1182(h), 1182(i), 1229b, 1229c, and 1255.

21

Attorney General, other than the granting of relief under section 208(a)." *Id.* at § 306.

In 2001, the Supreme Court grappled with the judicial-review limitations in the permanent rules. In *St. Cyr*, 533 U.S. at 314, 121 S. Ct. at 2287, the Supreme Court determined that the writ of habeas corpus was still available to alien petitioners despite the limitations of "judicial review" in the IIRIRA. The INS argued that three provisions of the IIRIRA—8 U.S.C. § 1252(a)(1), 1252(a)(2)(C), and 1252(b)(9)—precluded the District Court from exercising its jurisdiction to consider St. Cyr's habeas corpus petition.[13] *Id.* at 310–11, 121 S. Ct. at 2285. The Supreme Court concluded that, because "judicial review" is a historically distinct term from "habeas corpus," the limitations in these statutes did not bar jurisdiction under 28 U.S.C. § 2241, the general habeas statute. *Id.* at 312–13, 121 S. Ct. at 2285–86. The clear import of *St. Cyr* was that judicial review of questions of law regarding removal orders needed to be preserved in some manner to avoid creating serious constitutional problems. *See id.* at 300, 121 S. Ct. at 2279 ("A construction of the amendments at issue that would entirely preclude review of a pure question

---

[13] St. Cyr challenged the Attorney General's conclusion that, as a matter of statutory interpretation, he was not eligible for discretionary relief. He alleged that the restrictions on discretionary relief for aliens convicted of offenses involving moral turpitude or the illicit traffic in narcotics contained in the Antiterrorism and Effective Death Penalty Act of 1996 and the IIRIRA do not apply to aliens who pleaded guilty to those crimes before the enactment of the restrictions. *St. Cyr*, 533 U.S. at 293, 121 S. Ct. at 2275.

of law by any court would give rise to substantial constitutional questions."). *St. Cyr* found that such review was preserved by the availability of habeas corpus, but left open the possibility that Congress could otherwise restrict the availability of the writ of habeas corpus as long as "question[s] of law" could be answered in a judicial forum. *Id.* at 314, 121 S. Ct. at 2287.

Following *St. Cyr*, Congress enacted the Real ID Act of 2005, which added another provision to § 1252. *See* Pub. L. No. 109-13, 119 Stat. 231. Section 1252(a)(2)(D), as currently enacted, states:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

*See* 8 U.S.C. 1252(a)(2)(D); Pub. L. No. 109-13 at § 106(a)(1)(iii), 119 Stat. at 310.[14]

The Real ID Act also added a provision that a petition for review filed with the Court of Appeals in accordance with § 1252 should be the "sole and exclusive means for judicial review of an order of removal" and that "judicial review" included "habeas corpus review." *Id.* § 106(a)(1)(B)(5); *see also Nasrallah v.*

---

[14] The Real ID Act also added prefatory language to § 1252(a)(2)(B) & (C), by inserting "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D)," § 106(a)(1)(ii), 119 Stat. at 310, and "regardless of whether the judgment, decision, or action is made in removal proceedings," *id.* at § 101(f).

23

*Barr*, 140 S. Ct. 1683, 1690 (2020) (recognizing that 8 U.S.C. § 1252(a)(5)

supersedes *St. Cyr*).

> In its entirety, 8 U.S.C. § 1252(a)(2)(B) now reads:
>
> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> **(i)**    any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title,[15] or
>
> **(ii)**    any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

Before proceeding to the merits of Patel's petition, we must assess whether

we have jurisdiction under § 1252 to consider his petition.

## III.

We start where we always start—with the language of the statute.  Section

1252, entitled "Judicial review of orders of removal," first gives the Courts of

---

[15] "Sections 1182(h) and 1182(i) address waivers of inadmissibility based on certain criminal offenses, and fraud or misrepresentation, respectively; § 1229b addresses cancellation of removal; § 1229c, voluntary departure; and § 1255, adjustment of status." *Kucana v. Holder*, 558 U.S. 233, 239 n.2, 130 S. Ct. 827, 832 n.2 (2010).

Appeals jurisdiction to review "final order[s] of removal." 8 U.S.C. § 1252(a)(1).[16]

But what Congress giveth, it can also taketh away. And in § 1252(a)(2), the statute explicitly lists certain "[m]atters [that are] not subject to judicial review." Included among these matters are "[d]enials of discretionary relief." Within that section are two categories of "judgment[s], decision[s] or action[s]" that "no court shall have jurisdiction to review." *Id.* § 1252(a)(2)(B). The first—at issue here— strips courts of the jurisdiction to review "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." *See* § 1252(a)(2)(B)(i). The second strips courts of the jurisdiction to review decisions that are statutorily specified to be in the discretion of the Attorney General or the Secretary of Homeland Security. *See* § 1252(a)(2)(B)(ii).

Section 1252(a)(2)(D) then restores our jurisdiction to review constitutional claims or questions of law. Such a claim must be colorable. *Arias v. U.S. Att'y Gen.*, 482 F.3d 1281, 1284 (11th Cir. 2007). In other words, a party may not dress

---

[16] A final order of removal encompasses "the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Nasrallah*, 140 S. Ct. at 1691. Review of a final order of removal extends to "all matters on which the validity of the final order is contingent." *Id.* (quoting *Chadha*, 462 U.S. at 938, 103 S. Ct. at 2777 (internal quotation marks omitted)). As a final order of removal is contingent on the denial of discretionary relief, the immigration judge's evidentiary findings regarding discretionary relief are merged into the final order of removal. *Id.*

25

up a claim with legal or constitutional clothing to invoke our jurisdiction. *Id.* Therefore, as the Supreme Court has interpreted the jurisdiction-stripping provision of § 1252(a)(2)(B), "a noncitizen may not bring a factual challenge to orders denying discretionary relief." *Nasrallah*, 140 S. Ct. at 1694.

Patel sought relief under § 1255(i)(1)(B)(ii).  There is no question that § 1255 is among the enumerated categories that § 1252(a)(2)(B)(i) bars from review.  A straightforward reading of the jurisdiction-stripping statute indicates that we lack jurisdiction to review Patel's petition except to the extent that he raises constitutional claims or questions of law.

The parties disagree with this plain-reading interpretation, arguing that we have jurisdiction to review certain types of judgments, but diverging as to the scope of our jurisdiction.[17]  Patel argues that the statute only strips our jurisdiction to review the ultimate discretionary relief determination, but that we retain jurisdiction to review factual, legal, and constitutional challenges to any eligibility determination.  On the other hand, the Attorney General, relying on a string of cases interpreting an earlier version of this statute, argues that we are precluded from reviewing both the ultimate decision and factual challenges to discretionary

---

[17] Even though the parties agree that this Court has some limited jurisdiction, we must consider jurisdictional issues *sua sponte*.  *Gonzalez v. Thaler*, 565 U.S. 134, 141, 132 S. Ct. 641, 648 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented.").

eligibility determinations, but can consider factual challenges to non-discretionary eligibility determinations. Under its interpretation, we retain jurisdiction to review all constitutional and legal challenges.

This section proceeds in two parts. We first explain why the statute strips us of jurisdiction from considering Patel's claim that, as a factual matter, he checked the wrong box and thus lacked the requisite subjective intent. We then explain why the parties are misguided in their analyses.

### A.

We lack jurisdiction to review the immigration court's determination that Patel was ineligible for relief because, as a factual matter, he misrepresented his citizenship. The statute means what it says, "no court shall have jurisdiction to review" "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of [Title 8]." Except, as stated in § 1252(a)(2)(D), we maintain jurisdiction to review constitutional claims or questions of law. We start with the language of § 1252(a)(2)(B)(i) itself and then look at the statutory scheme.

### 1.

At heart, the varying approaches disagree over the definition of judgment in § 1252(a)(2)(B)(i). The word "judgment" is not defined in Title 8, Chapter 12 of

27

the United States Code.  *See* 8 U.S.C. § 1101.  Therefore, in interpreting the

statute, we give "each word its ordinary, contemporary, [and] common meaning."

*Artis v. Dist. of Columbia*, 138 S. Ct. 594, 603 n.8 (2018) (internal quotation marks

and citation omitted).  Black's Law Dictionary offers numerous definitions for

judgment.  Here are a few representative samples:

- The official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination;
- The final decision of the court resolving the dispute and determining the rights and obligations of the parties;
- Determination of a court of competent jurisdiction upon matters submitted to it.
- An opinion or estimate.

*Judgment*, Black's Law Dictionary (2020).  Some of these definitions suggest that

"judgment" refers to a final decision.  Others suggest that "judgment" refers to any

decision made by a court.  *See id.* ("Terms 'decision' and 'judgment' are

commonly used interchangeably.").

Other dictionaries tell the same story.  The Oxford English Dictionary provides

the following relevant definitions for "judgment":

- The action or result of forming or pronouncing an opinion.
  - The formation of an opinion or conclusion concerning something, esp. following careful consideration or deliberation.  Also: the opinion or conclusion thus formed; an assessment, a view, an estimate.
  - That which has been formally decided and pronounced to be the case; any formal or authoritative decision, as of an umpire or arbiter.
  - The pronouncing of a deliberate opinion upon a person or thing, or the opinion pronounced.

28

- The action or result of pronouncing a legal decision, and related uses.
  - A decision formally made in regard to a matter under consideration in a court of law or comparable context; a judicial decision, pronouncement, or order; the action or act of making or announcing such a decision.

*Judgment*, Oxford English Dictionary (2nd ed. 1989),

https://www.oed.com/view/Entry/101892?redirectedFrom=judgment#eid (last

visited May 29, 2020).[18]  Similarly, the following definitions are found in

Merriam-Webster:

- An opinion or estimate so formed.
- A formal utterance of an authoritative opinion.
- A formal decision given by a court.
- A proposition stating something believed or asserted.

*Judgment*, Merriam-Webster Online Dictionary, https://www.merriam

webster.com/dictionary/judgment (last visited May 3, 2020).  These definitions fall

into one of two camps: either judgment means the final decision of a court, such as

a sentence, or it is broad and means any decision.  Any decision is the better fit,

because the statutory language is not limited to a final judgment of removal, but

rather "any judgment" regarding the five enumerated categories of relief.

Further, any doubt regarding the meaning of "judgment" in

§ 1252(a)(2)(B)(i) should be resolved in favor of a more expansive meaning given

---

[18] There are other definitions referring to "judgment" as a faculty (e.g., one has good judgment), among other more obscure uses.  Those are not relevant here.

29

the modifying phrases "any" and "regarding." As the Supreme Court has "repeatedly explained," "any" is expansive. *Babb v. Wilkie*, 140 S. Ct. 1168, 1173 n.3 (2020). The word "any" means "[o]ne indiscriminately of whatever kind." Black's Law Dictionary (6th ed. 1990); *see also Babb*, 140 S. Ct. at 1173 n.3 ("The standard dictionary definition of 'any' is '[s]ome, regardless of quantity or number.'" (quoting American Heritage Dictionary 59 (def. 2) (1969)). Thus, "[r]ead naturally," the word "any" has an expansive effect on the word that it modifies. *United States v. Gonzales*, 520 U.S. 1, 5, 117 S. Ct. 1032, 1035 (1997). In addition, modifiers such as "respecting" and "regarding" have a broadening effect, "ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018). Thus, read in context, § 1252(a)(2)(B)(i) precludes us from reviewing "whatever kind" of judgment "relating to" the granting of relief under the five enumerated sections.

2.

To interpret the scope of our jurisdiction, we must also consider the rest of the statutory scheme. Section 1252(a)(2)(D) restores our jurisdiction to review constitutional claims or questions of law. *Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062, 1068 (2020). To invoke jurisdiction under § 1252(a)(2)(D), a petitioner must "allege at least a colorable constitutional violation." *Arias*, 482 F.3d at 1284.

30

A colorable claim need not involve a "substantial" violation, but "the claim must have some possible validity." *Id.* at 1284 n.2 (quoting *Mehilli v. Gonzales*, 433 F.3d 86, 93–94 (1st Cir. 2005)). "A petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Id.* at 1284 (quoting *Torres–Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)). The Supreme Court also recently addressed the scope of "questions of law" in § 1252(a)(2)(D), determining that it restores the Court's jurisdiction to review the "application of a legal standard to undisputed or established facts." *Guerrero-Lasprilla*, 140 S. Ct. at 1068. The BIA, in reviewing an immigration judge's decision, establishes the facts and makes legal determinations. On review, we are jurisdictionally limited to considering only colorable constitutional or legal challenges to those established facts.

Reading § 1252(a)(2)(B)(i) in combination with §1252(a)(2)(D), we determine that we lack jurisdiction to review Patel's challenges to "any judgment regarding the granting relief" under § 1255 unless such challenges involve a viable constitutional or legal claim. As the Seventh Circuit wrote, "while the purpose of the door-closing statute appears to be to place discretionary rulings beyond the power of judicial review (hence the caption of subsection (B)), the statute itself, read literally, goes further and places all rulings other than those resolving questions of law or constitutional issues beyond the power of judicial review."

31

*Cevilla v. Gonzales*, 446 F.3d 658, 661 (7th Cir. 2006); *cf. Jean v. Gonzales*, 435 F.3d 475, 480 (4th Cir. 2006).

Logically, the Seventh Circuit's reasoning makes sense given the background of *St. Cyr*. The Supreme Court recognized that historically, habeas was a mechanism to review "*questions of law* that arose in the context of discretionary relief." 533 U.S. at 307, 121 S. Ct. at 2283 (emphasis added). But "the courts generally did not review *factual determinations* made by the Executive." *Id.* at 306, 121 S. Ct. at 2282 (emphasis added). The current judicial-review scheme ensures that courts maintain jurisdiction to review "questions of law" while streamlining the process of judicial review. *See Foti*, 375 U.S. at 224–25, 84 S. Ct. at 311–13. The dissent argues that "judgment" must be read narrowly because *St. Cyr* and other opinions emphasize a strong presumption in favor of judicial review of administrative action. Dissenting Op. at 57–59. The presumption cautions against "foreclos[ing] all forms of meaningful judicial review," *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496, 111 S. Ct. 888, 898 (1991), and has led courts to preserve review of "questions of law," *St. Cyr*, 533 U.S. at 307, 121 S. Ct. at 2283. Such review is preserved under our

32

interpretation.[19]  Applicants who have been denied a form of discretionary relief enumerated in § 1252(a)(2)(B)(i) can still obtain review of constitutional and legal challenges to the denial of that relief, including review of mixed questions of law and fact.  *See Guerrero-Lasprilla*, 140 S. Ct. at 1071.  Via explicit instruction from Congress, however, we are restricted from reviewing factual challenges to denials of certain kinds of discretionary relief.

The presumptions do not require a garbled interpretation of the statute to ensure the broadest possible review, especially to allow review of subordinate decisions underpinning an ultimately unreviewable decision.  We conclude that the best interpretation of § 1252(a)(2)(B)(i) is that we lack jurisdiction to review "any judgment regarding the granting of relief" under the five enumerated categories, unless the petitioner asserts a constitutional or legal challenge to the denial of such relief.

## B.

The Attorney General argues for a mixed model.  In his view, courts have jurisdiction to review non-discretionary determinations underlying an alien's removal order, but lack jurisdiction to review discretionary determinations, except

---

[19] And, as the dissent points out, our interpretation of § 1252(a)(2)(B)(i) in no way restricts our jurisdiction to review the legal and factual predicates for an alien's *removal*. Dissenting Op. at 82–83; *see also* § 1252(b)(9).

to the extent that those determinations raise questions of law or constitutional claims. Patel argues that we retain broad jurisdiction to review final orders of removal; courts are precluded only from reviewing the ultimate grant of discretionary relief. Under his interpretation, "judgment" refers only to the agency's exercise of "grace," and no judgment is exercised in determining whether an alien meets the statutory eligibility requirements. Therefore, the argument goes, we are prohibited from reviewing the ultimate decision of who among eligible persons is granted relief but maintain jurisdiction to review whether an alien meets threshold eligibility determinations. Both interpretations lack a statutory basis and are circuitous run-arounds on the judicial-review limitation.

1.

Under the Attorney General's interpretation, which the dissent adopts, some of the eligibility requirements are discretionary and others are not. The Attorney General's delineation is flawed because determining whether an alien is statutorily eligible for relief is not a "discretionary" decision. All eligibility determinations are "non-discretionary." As the Supreme Court has said, eligibility determinations are "substantive decisions . . . made by the Executive."[20] *Kucana*, 558 U.S. at 247, 130 S. Ct. at 837. Each enumerated section in § 1252(a)(2)(B)(1) sets forth

---

[20] In removal proceedings, these decisions are made by an immigration judge and subject to review by the BIA.

34

specific statutory requirements that must be met before any act of grace can be bestowed upon the alien.  For relief under § 1129b(b), for example, an alien is eligible for discretionary relief only if the alien has "(A) a continuous physical presence of not less than 10 years, (B) good moral character, (C) a lack of certain criminal convictions, and (D) establishes exceptional and extremely unusual hardship to a qualifying relative."  For an adjustment of status under § 1255(i), such as the one that Patel seeks, the Attorney General may adjust the status of qualified aliens[21] only if "(A) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence," and "(B) an immigrant visa is immediately available to the alien at the time the application is filed."

In assessing our jurisdictional boundaries, we—and other Circuits—have often characterized these eligibility requirements as "discretionary" or "non-discretionary" determinations.[22]  For example, we have held that the "exceptional and extremely unusual hardship" determination is a discretionary decision, while the continuous physical presence requirement is a non-discretionary determination.

---

[21] *See* 8 U.S.C. § 1255(i)(1).

[22] *See, e.g., Najjar v. Ashcroft*, 257 F.3d 1262, 1298 (11th Cir. 2001); *Gonzalez-Oropeza*, 321 F.3d at 1332; *Gomez-Gomez v. INS*, 681 F.2d 1347, 1349 (11th Cir. 1982); *Twum v. Barr*, 930 F.3d 10, 19–20 (1st Cir. 2019); *Barco-Sandoval v. Gonzales*, 516 F.3d 35, 39–40 (2d Cir. 2008); *Mejia-Castanon v. Att'y Gen.*, 931 F.3d 224, 232 (3d Cir. 2019); *Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 216 (5th Cir. 2003); *Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003); *Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1149 (10th Cir. 2005); *Perales-Cumpean v. Gonzales*, 429 F.3d 977, 982 (10th Cir. 2005).

*Najjar v. Ashcroft*, 257 F.3d 1262, 1298 (11th Cir. 2001); *see also Gonzalez-Oropeza*, 321 F.3d at 1332.  In *Najjar*, we explained that determining whether an alien met the presence requirement was not an exercise in discretion but was simply "a matter of applying the law to the facts of the case."  257 F.3d at 1298.  Hardship, on the other hand, was a "discretionary decision" because Congress had delegated the authority to construe the meaning of that phrase to the Attorney General.  *Id.* (citing *Jong Ha Wang*, 450 U.S. at 145, 101 S. Ct. at 1031); *see also Gomez-Gomez*, 681 F.2d at 1349.

This distinction between discretionary and non-discretionary determinations arose from our interpretation of the IIRIRA transitional rules, which barred the appeal of "any discretionary decision" under five enumerated sections of the INA.  *See Najjar*, 257 F.3d at 1298 ("Section 309(c)(4)(E) does not preclude our review of all decisions under § 244 of the INA, but applies only to 'any discretionary decision' under the enumerated provisions.").  When the permanent rules went into effect, we grafted the distinction onto the permanent rules without considering the difference in statutory language.  *Gonzalez-Oropeza*, 321 F.3d at 1332 (applying

the discretionary distinction from "1252(a)(2)(B)'s predecessor").  Other lines of

cases subsequently adhered to this precedent without further consideration.[23]

But the permanent rules do not include the "any discretionary decision"

language.  Instead, the statute bars review for "any judgment," a broader term that

encompasses both discretionary and non-discretionary determinations.  It provides

a blanket prohibition on review of judgments relating to these five categories.  A

change in statutory language generally connotes a change in meaning to the statute.

*In re BFW Liquidation, LLC*, 899 F.3d 1178, 1191 (11th Cir. 2018).  Therefore, "in

the absence of any evidence to the contrary, one can plausibly infer that, by

replacing" any discretionary decision "with new language that omits any such

requirement, Congress intended to eliminate [that requirement], and to replace that

requirement with something substantively different."  *Id.*; *see also Prado v. Reno*,

---

[23] *See, e.g., Jimenez-Galicia v. U.S. Att'y Gen.*, 690 F.3d 1207, 1209 (11th Cir. 2012); *Bedoya-Melendez v. U.S. Att'y Gen.*, 680 F.3d 1321, 1324 (11th Cir. 2012); *Camacho-Salinas v. U.S. Att'y Gen*, 460 F.3d 1343, 1347 (11th Cir. 2006).

We are not the only circuit to have erroneously relied on precedent interpreting the transitional rules to demarcate our jurisdiction under the permanent rules.  For example, in *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 661 (5th Cir. 2003), the Fifth Circuit cited *Gonzalez-Torres v. INS*, 213 F.3d 899, 901 (5th Cir. 2000), for its holding that the continuous presence requirement is a factual determination subject to appellate review.  *Gonzalez-Torres* of course interpreted the transitional rules, not the permanent rules.  213 F.3d at 901.  In *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008), the Sixth Circuit quoted language from *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004), for its conclusion that it could review non-discretionary decisions underpinning discretionary relief.  Appellate jurisdiction in *Billeke-Tolosa* was based on the transitional rules of the IIRIRA.  385 F.3d at 710.

198 F.3d 286, 290–92 (1st Cir. 1999) ("[T]he permanent rules remove more than 'discretionary decisions' from review in the courts of appeals.").

Clinging to the discretionary and non-discretionary distinction flies in the face of the statutory language specifically used by Congress. And it is a misnomer. We have previously described "discretionary" decisions as those that lack "an objective legal standard on which a court can base its review." *Bedoya-Melendez*, 680 F.3d at 1325. In *Bedoya-Melendez*, we contrasted a question of law—which involves "the application of an undisputed fact pattern to a legal standard"—to a discretionary decision, which "requires an adjudicator to make a judgment call." *Id.* at 1324. As a matter of jurisprudence, rather than of jurisdiction, we—as well as the BIA—would be unable to review a judgment that truly lacked any standards of review. *Cf. Heckler v. Chaney*, 470 U.S. 821, 830, 105 S. Ct. 1649, 1655 (1985) ("[E]ven where Congress has not affirmatively precluded review, review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.").

The threshold eligibility determinations, however, are not discretionary decisions—immigration courts cannot grant relief if they are not met. As the Supreme Court has said, "[e]ligibility [for discretionary relief] is governed by specific statutory standards which provide a right to a ruling on an applicant's eligibility." *Jay*, 351 U.S. at 353, 76 S. Ct. at 924. Eligibility determinations—

38

both those that we have previously deemed "discretionary" and those that we have

deemed "non-discretionary"—involve the same decisional process: applying the

law to a set of facts.  And, "the application of law will necessarily involve

judgment."  Henry M. Hart Jr. & Albert M. Sacks, Legal Process: Basic Problems

in the Making and Application of Law 375 (1958).  If the statutory standards for

eligibility are less specific, it gives an immigration judge more leeway in

interpreting and applying the law.  But qualitative standards such as "good moral

character" or "exceptional and extremely unusual hardship" are not in themselves

discretionary decisions.  An immigration judge must find that the alien meets such

standards before she can grant relief.[24] Not only does the Attorney General's

interpretation—allowing appellate review of factual decisions underlying some

statutory eligibility determinations but not others—lack a statutory basis, it is also

illogical as a matter of policy.  If Congress intended to block our review of the

ultimate decision to grant relief, why would courts be entitled to assess the

evidence for the more objective eligibility requirements, such as residency

requirements, while being barred from weighing the evidence for the qualitative

---

[24] The dissent reads our analysis to say that judgment means "findings of fact."
Dissenting Op. at 64.  While we don't dispute that a factfinder may need to use judgment to
assess witness credibility, weigh evidence, evaluate competing evidence, and draw inferences,
we read "judgment" to encompass eligibility determinations rather than requiring appellate
courts to assess whether a particular finding reflects an exercise of "judgment" before a
determination of whether they have jurisdiction to review that finding.

39

requirements, such as the character requirements?[25]  A more consistent reading of "judgment" is that, under § 1252(a)(2)(B)(i), all eligibility determinations for the five enumerated categories of discretionary relief are barred from review.

Finally, § 1252(a)(2)(B) must be read in conjunction with § 1252(a)(2)(D). *See Guerrero-Lasprilla*, 140 S. Ct. at 1073.  Rather than engaging in mental gymnastics to determine if a particular decision is "discretionary or not" and then determining whether the alien's claim presents a question of law or a constitutional challenge, the logical interpretation of the statutory scheme is that "judgment" encompasses all decisions made by the BIA and that we are foreclosed from

---

[25] The dissent answers our inquiry with the simple explanation that there are questions about which the Attorney General "simply might be wrong."  Dissenting Op. at 79.  Perhaps in recognition that the actual eligibility requirements under § 1255 and the other enumerated categories of relief are not merely "straightforward" criteria, the dissent reaches for a hypothetical age requirement to contextualize how obvious some errors can be.  Dissenting Op. at 53. We are unpersuaded.

First, the hypothetical assumes that an immigration judge's factual findings are the end of the story.  Before an applicant can petition this Court for review, however, he must appeal to the BIA, which reviews the immigration judge's factual findings for clear error.  8 C.F.R. § 1003.1(d)(3).  For example, in Patel's appeal, the BIA identified the three factors upon which the Immigration Judge concluded that Patel's testimony was not credible and found no clear error.  The BIA's review should correct obvious errors.  *See, e.g.*, *In Re B-*, 21 I. & N. Dec. 66, 71 (BIA 1995) (declining to accept the immigration judge's adverse credibility finding).  Furthermore, erroneous factual findings are subject to correction via a motion to reconsider.  *See* 8 C.F.R. § 1003.2(b)(1).

Second, to the extent that an immigration judge's factual conclusions reflect a lack of "reasoned consideration" (or lack any reasoning, as in the hypothetical), those rulings are subject to legal and constitutional challenges.  *See Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1302–03 (11th Cir. 2015); *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369 (11th Cir. 2006).

Finally, it is still unclear why we can review the BIA's erroneous determination of age for the hypothetical age requirement, but lack jurisdiction to review the same factual finding when it relates to the "extreme hardship" or "good moral character" requirement.

reviewing those determinations unless the alien presents a legal or constitutional challenge. We thus lack jurisdiction to review factual challenges to a denial of discretionary relief.[26] *Nasrallah*, 140 S. Ct. at 1694; *Guerrero-Lasprilla*, 140 S. Ct. at 1073 ("The Limited Review Provision, however, will still forbid appeals of factual determinations—an important category in the removal context.").

The two pathways—that judgments are barred from review, except to the extent they raise a constitutional or legal claim, and that discretionary decisions are barred from review—may often reach the same result. As the Second Circuit

---

[26] The dissent highlights one potential quirk of our interpretation—that we retain jurisdiction to review factual determinations when made in the removability context but lack jurisdiction to review the same facts when made in the discretionary relief context. Dissenting Op. at 82–83. This difference arises not because of our interpretation of "judgment," but is due to the very nature of discretionary relief. A charge of removal is a separate determination from a finding of ineligibility for discretionary relief.

For example, the due process considerations at the two stages differ. *See Matovski v. Gonzales*, 492 F.3d 722, 738 (6th Cir. 2007). The government bears the burden of proving removability by clear and convincing evidence, while the applicant bears the burden of establishing admissibility clearly and beyond doubt. *Id.* The government must inform the alien of the specific allegations which would justify removal but need not list all grounds for inadmissibility in the notice to appear. *See Aalund v. Marshall*, 461 F.2d 710, 712 (5th Cir. 1972); *Salviejo-Fernandez v. Gonzales*, 455 F.3d 1063, 1066 (9th Cir. 2006). Aliens are entitled to effective assistance of counsel during the removal proceeding yet lack the same constitutional protection when seeking discretionary relief. *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999). Applicants cannot mount substantive due process challenges to eligibility considerations for discretionary relief because, we have held, they lack the requisite liberty interest. *Mohammed v. Ashcroft*, 261 F.3d 1244, 1250–51 (11th Cir. 2001).

Given that these differences follow from the government's charging decisions, it is not surprising that our jurisdiction to review the two determinations may also differ. Congress explicitly limited our jurisdiction to review "any judgment regarding the granting of relief under" § 1255 and included among those judgments are factual determinations regarding inadmissibility.

41

pointed out in *Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010), the "two characterizations" are "congruent: BIA statutory interpretation pursuant to an eligibility determination is nondiscretionary and therefore reviewable precisely because it presents a legal question.  In contrast, the BIA's factfinding, factor-balancing, and exercise of discretion normally do not involve legal or constitutional questions, so we lack jurisdiction to review them."  *See also Jean*, 435 F.3d at 480 (concluding that the Court need not consider "the scope of subsection (a)(2)(B)" in light of the enactment of subsection (D) by the REAL ID Act); *Reyes v. Holder*, 410 F. App'x 935, 939 (6th Cir. 2011) ("[I]t remains unclear whether the two categories . . . overlap entirely or almost entirely.").

Regardless of how we have characterized eligibility determinations in the past, they are threshold requirements.[27]  The Attorney General and immigration judges have no discretion to grant relief unless the statutory criteria are met.

2.

---

[27] By treating all eligibility decisions as non-discretionary, we eliminate the case-by-case determination of whether an eligibility decision is discretionary or non-discretionary and bring stability to the law.  *See, e.g.*, *Jimenez-Galicia*, 690 F.3d at 1210 ("The other circuits that have examined . . . whether the catchall provision [for good moral character] is discretionary have not come to a uniform result."); *Twum*, 930 F.3d at 19 (explaining the juxtaposition of conflicting case precedent about whether particular eligibility determinations provide objective criteria); *Wilmore v. Gonzales*, 455 F.3d 524, 527 (5th Cir. 2006) (noting the split between the Ninth and Tenth Circuits on whether the determination of "extreme cruelty" is discretionary).

Relying on the Ninth Circuit's en banc opinion in *Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1142 (9th Cir. 2002), Patel argues that "[t]he only judgment exercised regarding the order or decision lies in the Attorney General's discretionary authority to determine who among the eligible persons should be granted discretionary relief." Because "[n]o judgment is exercised with respect to the mere eligibility for discretionary relief," he asserts that § 1252(a)(2)(B)(i) does not bar review of whether an alien meets the statutory criteria for relief. *Id.*

The Ninth Circuit held that it had jurisdiction to consider whether Montero-Martinez's adult daughter qualifies as a "child" under 8 U.S.C. § 1229b(b)(1)(D)[28] because this "purely legal and hence non-discretionary question" is not a "*judgment* regarding the granting of relief." *Id.* at 1140–41 (emphasis added). The Ninth Circuit based its interpretation on three arguments. First, the Court looked to the way the term "judgment" was used throughout the INA. Second, the Court considered the structure of § 1252(a)(2)(B). Third, the Court compared the jurisdiction-stripping language in § 1252(a)(2)(B)(i) with other provisions that limit judicial review. The Court concluded that, based on these factors as well as the background principle of narrowly construing restrictions on jurisdiction,

---

[28] For cancellation of removal under § 1229b(b), an alien must, inter alia, establish that "removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1229b(b)(1)(D).

43

§ 1252(a)(2)(B)(i) did not unambiguously bar review over "all decisions by the BIA regarding discretionary relief." *Id.* at 1144. Instead § 1252(a)(2)(B)(i) "eliminates jurisdiction only over decisions by the BIA that involve the exercise of discretion." *Id.*

We disagree. While a discretionary decision, such as the "grace" of ultimately granting relief, necessarily involves the exercise of judgment, the meaning of judgment does not end there. *Compare* Black's Law Dictionary (defining "administrative discretion" as "[a] public official's or agency's power to exercise judgment in the discharge of its duties" and "judicial discretion" as "[t]he exercise of judgment by a judge or court based on what is fair under the circumstances and guided by the rules and principles of law"), *with Judgment*, Black's Law Dictionary (6th ed. 1990) ("Determination of a court of competent jurisdiction upon matters submitted to it."). The Ninth Circuit so narrowly construed the word "judgment" that it contorted its meaning.[29]

As the dictionary definitions above indicate, "judgment" is a broad term, encompassing both the process of forming an opinion as well the pronouncement

---

[29] The Ninth Circuit referenced a dictionary for its footnote that other common definitions of "judgment" include "a formal utterance of an authoritative opinion" or the "process of forming an opinion or evaluation," but it did not cite a dictionary or other common-meaning source for its conclusion that "judgment" means either "any decision" or "any decision involving the exercise of discretion." *Montero-Martinez*, 277 F.3d at 1141 & n.4.

of the result.  That process includes both legal and factual determinations and is not

arbitrarily limited to decisions involving the exercise of discretion.  As the panel in

*Montero-Martinez* initially held, "§ 1252(a)(2)(B)(i), by its plain terms, appears to

encompass all decisions regarding cancellation of removal, including

determinations of statutory eligibility."  249 F.3d 1156, 1158 (9th Cir.), *as

amended* (May 30, 2001), *rev'd,* 277 F.3d at 1137.

After the Supreme Court decided *St. Cyr*, the Ninth Circuit granted Montero-

Martinez's petition for rehearing en banc, 277 F.3d at 1137, and then re-interpreted

the meaning of "judgment" to conform the statutory language to what it thought *St.

Cyr* required.[30]  Mysteriously, the Ninth Circuit's en banc opinion never addresses

the common meaning of judgment.  And *St. Cyr* merely acknowledged that some

form of judicial review for questions of law needed to be preserved—such as via

the writ of habeas corpus—not that "judgment" can only mean decisions involving

---

[30] The Ninth Circuit is not alone in re-interpreting the meaning of "judgment" after acknowledging that its plain meaning bars review of all decisions.  *Compare Morales Ventura v. Ashcroft*, 348 F.3d 1259, 1262 (10th Cir. 2003) ("On its face, [8 U.S.C. § 1252(a)(2)(B)(i)] seems to foreclose judicial review completely."), *with Sabido Valdivia v. Gonzales*, 423 F.3d 1144, 1148 (10th Cir. 2005) (adopting the Ninth Circuit's analysis in *Montero-Martinez*); *Mancha-Chairez v. Reno*, 224 F.3d 766 (5th Cir. 2000) "[8 U.S.C. § 1252(a)(2)(B)(i)] forestalls any judicial review of Board judgments, regardless of the conclusion reached."), *with Mireles-Valdez v. Ashcroft*, 349 F.3d 213, 216 (5th Cir. 2003) ("[8 U.S.C. § 1252(a)(2)(B)(i)'s] ban on review of "judgment[s] regarding the granting of relief" precludes review only of *discretionary* decisions." (emphasis in original)), *and Prado*, 198 F.3d at 290 ("[T]he permanent rules remove more than 'discretionary decisions' from review in the courts of appeals."), *with Mele v. Lynch*, 798 F.3d 30, 32 (1st Cir. 2015) ("[W]e lack jurisdiction to review the purely discretionary decisions made under the other statutory sections identified in § 1252(a)(2)(B)(i).").

the exercise of discretion.  With the enactment of the Real ID Act of 2005, Congress embedded these protections in § 1252(a)(2)(D), which preserves appellate review of "purely legal" questions, such as whether an adult daughter qualifies as a child.

We are unpersuaded by the Ninth Circuit's other arguments.  By the Court's own reasoning, it is impossible to give the word "judgment" the same meaning throughout the INA.  *Montero-Martinez*, 277 F.3d at 1141.  Sometimes, when preceded by the modifier "discretionary," it means "discretionary judgment."  *Id.* n.5; *see also* 8 U.S.C. § 1226(e); 8 U.S.C. 1252(b)(4)(D).  Other times, when preceded by "formal" or when the provision includes the word "final," judgment refers to a final judgment.  *See* 8 U.S.C. § 1101(a)(48)(A); § 1158(b)(2)(A)(ii); § 1227(a)(2)(D); § 1229a(c)(3)(B)(i); § 1324b(i)(2); § 1375c(a)(3).  Because, "[a] given term in the same statute may take on distinct characters from association with distinct statutory objects calling for different implementation strategies," *Envtl. Def. v. Duke Energy Corp.*, 549 U.S. 561, 574, 127 S. Ct. 1423, 1432 (2007), the use of the term in other parts of the statute says little about its meaning in § 1252(a)(2)(B)(i).

Our interpretation of "judgment" also does not make the "any other decision" language in § 1252(a)(2)(B)(ii) superfluous.  *See Montero-Martinez*, 277 F.3d at 1142.  Section 1252(a)(2)(B) limits our review of discretionary relief.

46

Section 1252(a)(2)(B)(i) enumerates five types of relief. *See Kucana,* 558 U.S. at 246–47, 130 S. Ct. at 836. But those five categories aren't the only provisions in the INA that allow for discretionary action. *Id.* at 248, 130 S. Ct. at 837 (citing § 1157(c)(1); § 1181(b), & § 1182(a)(3)(D)(iv) as examples). Section 1252(a)(2)(B)(ii) is therefore a "catchall provision" to preclude our review of those other categories of discretionary relief. *Id.* at 247, 130 S. Ct. at 836.

The dissent expounds on this structure argument, pointing to the Supreme Court's decision in *Kucana* for additional support. Dissenting Op. at 69–70. In *Kucana*, the Supreme Court looked to the structure of § 1252(a)(2)(B) to support its holding that the "any other decision" language in § 1252(a)(2)(B)(ii) refers to decisions "made discretionary by legislation" rather than by regulation. *Id.* at 248, 130 S. Ct. at 837. Therefore, the dissent reasons, § 1252(a)(2)(B)(i) must also apply only to discretionary decisions. Dissenting Op. at 69–70.

That is a faulty conclusion. As we explained above, eligibility determinations are not discretionary. While the ultimate decision of whether to grant of relief is discretionary; eligibility for the relief is not. *Kucana* read "other" to align with the five types of *relief* enumerated in § 1252(a)(B)(ii). *See id.* at 247–48, 130 S. Ct. at 836–37. It said nothing about how to interpret the meaning of "judgment[s] regarding the granting of [that] relief."

47

Furthermore, our interpretation is the only one that appropriately reads § 1252(a)(2)(B)(i) & (ii) harmoniously.  If, as Patel contends, "judgment" is limited to the ultimate grant of grace, there is little need for § 1252(a)(2)(B)(i) because our review of that final decision is already circumscribed by § 1252(a)(2)(B)(ii).  *Id.* at 246–47, 130 S. Ct. at 836 & n. 13.  If eligibility criteria are deemed discretionary because Congress "itself set out the Attorney General's discretionary authority in the statute," those determinations would be barred from review by § 1252(a)(2)(B)(ii), not by § 1252(a)(2)(B)(i).  *Id.* at 247, 130 S. Ct. at 837.  And if, as the dissent reasons, eligibility criteria are deemed discretionary for some other reason, then *Kucana* provides no guidance because its holding was based on what Congress "made discretionary by legislation."  *Id.* at 246-47, 130 S. Ct. at 836.  Accordingly, we do not read "any other decision" to import a discretionary gloss on "any judgment."

Finally, the use of the words "decision" or "individual determination" in other judicial-stripping provisions in the INA does not convince us that "judgment" in § 1252(a)(2)(B)(i) is arbitrarily limited to decisions involving discretion.  Such a cursory comparison overlooks the words "any" and "regarding" in § 1252(a)(2)(B)(i).  If Congress intended to prohibit our review of only the ultimate determination of relief, it merely needed to say that "[n]o court shall have jurisdiction" to review "the ultimate judgment granting relief" under the

48

enumerated provisions, rather than stripping our jurisdiction to review "whatever kind" of judgments that "relate to the subject." *See Babb*, 140 S. Ct. 1173 n.3; *Appling*, 138 S. Ct. at 1760. And, as we have said before, "whatever kind" of judgments that "relate to the subject" include even the most objective seeming eligibility requirements.

Patel's interpretation—that § 1252(a)(2)(B) bars review only of the final grant or denial of relief—renders our jurisdictional limits meaningless. Enabling review of each individual determination underpinning the final decision effectively allows for review of the grant of relief. *See Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 620 (4th Cir. 2010) (finding that eligibility determinations cannot be divorced from the denial of discretionary relief). We cannot accept such a run-around of our limitations.

Because § 1252(a)(2)(B)(i) contains no modifying phrases that would indicate that "judgment" refers exclusively to a discretionary decision, we hold that we are precluded from reviewing any judgment relating to Patel's request for relief, except to the extent that he raises a constitutional claim or a question of law.

### III.

On appeal, Patel does not assert any constitutional claims regarding the denial of relief under § 1255. He claims that the BIA erred in its determination

49

that he lacked the requisite subjective intent to misrepresent his citizenship status. Such a challenge presents a factual question. We lack jurisdiction to such a claim under § 1252(a)(2)(B)(i).[31]

Patel also claims that the BIA used the wrong legal standard to determine that he is ineligible for relief. The Panel appropriately retained jurisdiction to consider that claim. We need not disturb the panel's ruling that the statute lacks a

---

[31] The dissent interprets § 1252(a)(2)(B)(i) to allow judicial review of this question, but fails to explain why a finding that Patel's false claim of citizenship was made with subjective intent is a "non-discretionary" finding subject to judicial review. In the dissent's view, Patel is either admissible or he is not; "[n]o discretion is required to make these decisions." Dissenting Op. at 74. That is an overly simplistic way of looking at the inadmissibility criteria in 8 U.S.C. § 1182(a).

For one, some of the inadmissibility criteria are statutorily specified to be in the discretion of the Attorney General. *See, e.g.*, § 1182(a)(3)(D)(iv) (discretionary waiver for applicants who have affiliated with a totalitarian party). Other criteria include statutory definitions to minimize discretion. *See, e.g.*, § 1182(a)(3)(B)(iii) & (iv) (defining "terrorist activity" and "engage in terrorist activity"). Others list regulations or statutes that should guide the Attorney General's opinion. *See, e.g.*, § 1182(a)(1)(A)(i) & (iii) (determinations of inadmissibility based on certain health-related grounds should be made "in accordance with regulations prescribed by the Secretary of Health and Human Services"); § 1182(a)(4)(A) & (B) (listing factors to consider in the determination of whether an applicant is "likely at any time to become a public charge"). And, still others clearly require the Attorney General "to use judgment to place someone in a subjective category that lacks clear, self-explanatory boundaries." Dissenting Op. at 78. For example, a determination that an applicant "seeks to enter the United States to engage solely, principally, or incidentally in" "any activity a purpose of which is the opposition to . . . the Government of the United States" is hardly self-explanatory or easily verified as correct or incorrect. *See* § 1182(a)(3)(A)(iii). The same goes for the provision on which Patel was found inadmissible. *See* § 1182(a)(6)(C)(ii)(I). To complicate the inquiry further, the Attorney General has discretion to grant inadmissibility waivers, including for the ground on which Patel was found inadmissible. *See, e.g.*, § 1182(g) (waiver for health-related grounds); § 1182(h) (waiver for marijuana offenses); § 1182(i) (waiver for fraud or misrepresentation grounds).

The dissent's interpretation assumes that an inadmissibility determination is one straightforward, non-discretionary decision. In reality, that eligibility determination is the culmination of a variety of judgments.

materiality element.  *See Patel v. U.S. Att'y Gen.*, 917 F.3d 1319, 1322 (11th Cir.

2019).

      **SO ORDERED.**

MARTIN, Circuit Judge, joined by WILSON, JORDAN, ROSENBAUM, and JILL PRYOR, Circuit Judges, dissenting:

Pankajkumar Patel applied to immigration authorities to adjust his immigration status so that he could continue living in the United States. His application for adjustment of his status was denied, and Mr. Patel then turned to this Court to review that denial of relief. Originally, a three-judge panel of this Court affirmed the ruling of the Board of Immigration Appeals ("BIA") and also affirmed the final order directing his removal from this country. Our en banc Court then vacated that panel opinion and reheard Mr. Patel's petition so the whole court could decide the proper scope of 8 U.S.C. § 1252(a)(2)(B)(i), a jurisdiction-stripping provision of the Immigration and Nationality Act ("INA"). Today the majority of the judges on this Court rule that a "straightforward reading" of § 1252(a)(2)(B)(i) tells us we lack jurisdiction to review any element of Mr. Patel's petition other than constitutional questions or errors of law. Maj. Op. at 25.

My reading of the statute leads me to a different understanding. The majority opinion analyzes the statute extensively. But it pays scant attention to the two foundational canons of statutory construction that must guide our interpretation of jurisdictional restrictions placed on us by the INA. First, there is a longstanding presumption in favor of judicial review of administrative actions. Time and again, the Supreme Court has told us that when a jurisdiction-stripping

52

provision "is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review." Guerrero-Lasprilla v. Barr, 589 U.S. ___, 140 S. Ct. 1062, 1069 (2020) (quoting Kucana v. Holder, 558 U.S. 233, 251, 130 S. Ct. 827, 839 (2010)). And the second tenet neglected by the majority is the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien."[1] INS v. Cardoza-Fonseca, 480 U.S. 421, 449, 107 S. Ct. 1207, 1222 (1987). The majority's failure to employ these canons of statutory construction gives us an interpretation of the statute that vests immigration officials with the ability to insulate immigration court rulings from judicial review based solely on their own charging decisions. The Supreme Court has warned against such an "extraordinary delegation of authority." Kucana, 558 U.S. at 252, 130 S. Ct. at 840.

Once the proper canons of construction are applied, § 1252(a)(2)(B)(i) cannot properly be read to strip this Court of jurisdiction to review a finding of fact that is contradicted by the record. Rather, the statute more naturally allows our

---

[1] "Alien" is not my preferred term, but it is the word used in the statute. I use it here when quoting the agency decision or the text of the INA, but otherwise have adopted the term "noncitizen" as equivalent to the statutory term. See Barton v. Barr, 590 U.S. ___, 140 S. Ct. 1442, 1446 n.2 (2020).

53

Court to review findings of fact that are mistaken. And that review properly extends even to eligibility determinations made by an Immigration Judge ("IJ"), where those determinations are based on facts belied by the record. This is so because, among other reasons, factual findings related to a person's <u>eligibility</u> for discretionary relief are generally not discretionary, and § 1252(a)(2)(B)(i) strips our jurisdiction to review only discretionary determinations. For example, assume the immigration statute says only people over the age of 40 years are eligible to remain in the country. The record contains much evidence of the applicant's actual age of 50 years, including her birth certificate and even photographs from her 40th birthday party, showing that it took place ten years ago. The IJ nevertheless finds that the applicant is only 30 years old, and rules as a result that the applicant is not eligible for discretionary relief. The applicant then comes to our Court to point us to the substantial evidence of her actual age of 50 years. I say our Court is empowered to review this obviously mistaken finding of fact that was the basis for denial of discretionary relief. It is also true, of course, that if the IJ had got the 50-year age right, and <u>then</u> the applicant was denied discretionary relief, our Court would have no jurisdiction to review the ultimate denial of relief.

Nearly every one of our sister circuits have adopted the reading of the jurisdiction stripping provisions that would allow courts to reverse findings of fact contradicted by the record. Under this widely accepted reading of

54

§ 1252(a)(2)(B)(i), our Court is entitled to review mistakes made by the IJ about the cold hard facts of Mr. Patel's eligibility for adjustment of status. And this review can extend to the immigration judge's credibility finding when that finding is based on facts plainly contradicted by the record. Since I believe the majority opinion misreads § 1252(a)(2)(B)(i), I respectfully dissent.

## I.

The majority has ably described the history of Mr. Patel's appeal, so I review it only briefly here. The Department of Homeland Security ("DHS") served Mr. Patel a notice to appear ("NTA") in April 2012 that charged him as being removable because he is an "alien" present in the United States without being admitted or paroled, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). The NTA did not charge Mr. Patel with being inadmissible. Mr. Patel conceded he was removable and applied for adjustment of status under 8 U.S.C. § 1255(i), based on an approved employment-related visa petition filed on his behalf. Mr. Patel's wife, Jyotsnaben, and one of his sons, Nishantkumar, also applied for derivative status based on Mr. Patel's application for adjustment. On May 9, 2013, the IJ found that Mr. Patel was not eligible for adjustment of status because, during his time living in the United States, he once falsely claimed United States citizenship. The IJ said this rendered Mr. Patel inadmissible under 8 U.S.C. § 1182(a)(6)(c)(ii)(I) and therefore not eligible for discretionary relief.

55

Mr. Patel appealed to the BIA.  In a divided decision, the BIA affirmed the IJ's factual findings that Mr. Patel was not a credible witness and had falsely represented himself to be a U.S. citizen for purposes of obtaining a noncommercial Georgia driver's license.  The BIA found no clear error in the IJ's rejection of Mr. Patel's argument that he "made a mistake" in checking a box on a form, indicating that he was a U.S. citizen. Board Member Wendtland dissented, noting that Mr. Patel was not inadmissible under Matter of Richmond, 26 I & N Dec. 779 (BIA 2016), since under Georgia law he was eligible to receive a driver's license whether or not he was a U.S. citizen.  Thus, according to Board Member Wendtland, Mr. Patel's answer to the citizenship question was immaterial to the issuance of his license.

Mr. Patel asked our Court to review the BIA's rejection of his claim.  What matters for this discussion is Mr. Patel's argument that, since he did not intend to check the U.S. citizenship box on the driver's license application form, he lacked the requisite subjective intent to be found inadmissible on the ground that he made a false claim of U.S. citizenship.  See Patel v. U.S. Att'y Gen., 917 F.3d 1319, 1326 (11th Cir. 2019).  As mentioned above, the panel that originally heard Mr. Patel's case affirmed the BIA ruling against him.  The panel concluded that it lacked jurisdiction to review any factual findings about Mr. Patel's intent that were

56

made in support of the denial of adjustment of status, including the IJ's finding that Mr. Patel's false claim was made with subjective intent. Id. at 1327.

On September 13, 2019, a majority of this Court's active judges voted to rehear Mr. Patel's petition en banc and vacated the panel opinion. We asked the parties to brief the question of whether Mr. Patel's subjective intent to obtain a purpose or benefit was a "non-discretionary finding pertaining to statutory eligibility for immigration relief" and whether we had jurisdiction to review that finding.

## II.

Before I address the text of § 1252(a)(2)(B)(i), I first review the statutory framework and interpretive canons that must guide our analysis. Remarkably, the majority mentions these principles only in passing. See Maj. Op. at 31–32. But they are foundational and compel a different conclusion than that reached by the majority.

First, the default rule of the INA is that the agency's legal holdings and factual findings are subject to judicial review. 8 U.S.C. § 1252(b)(2) and (9) tell us that appeals from the findings of immigration judges will be channeled through petitions for review to the federal courts of appeals, which have jurisdiction to

review "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States."

True, other sections of § 1252 limit this general grant of jurisdiction. But in applying those limits, we must follow two familiar canons of statutory interpretation. As for the first, the Supreme Court again recently reminded us that there is a "well-settled" and "strong presumption" favoring judicial review of administrative actions. Guerrero-Lasprilla, 140 S. Ct. at 1069 (quoting McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 496, 498, 111 S. Ct. 888, 898, 899 (1991)). The Court has "consistently applied" the presumption of reviewability when it interprets immigration statutes. Id. (quoting Kucana, 558 U.S. at 251, 130 S. Ct. at 839); see also INS v. St. Cyr, 533 U.S. 289, 298, 121 S. Ct. 2271, 2278 (2001). It has told us there is a "heavy burden" for dislodging the presumption in favor of judicial review, Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 672, 106 S. Ct. 2133, 2136 (1986), and this burden requires "clear and convincing evidence" that Congress intended to preclude review. Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 64, 113 S. Ct. 2485, 2499 (1993). For these reasons, when a statute is reasonably susceptible to different interpretations, we must adopt

the interpretation permitting federal court review.  Kucana, 558 U.S. at 251, 130 S. Ct. at 839.[2]

The presumption of judicial review is further buttressed by the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the alien."  Cardoza-Fonseca, 480 U.S. at 449, 107 S. Ct. at 1222.  We use this rule of construction because, as the Supreme Court has explained, "deportation is a drastic measure and at times the equivalent of banishment or exile."  INS v. Errico, 385 U.S. 214, 225, 87 S. Ct. 473, 480 (1966) (quotation marks omitted).  Because "the stakes are considerable for the individual, we will not assume that Congress meant to trench on his freedom[] beyond that

---

[2] The majority suggests that, because its interpretation preserves review of "questions of law" under § 1252(a)(2)(D), it does not run afoul of this principle.  Maj. Op. at 31–32.  That is a non sequitur.  The presumption of judicial review is not a jurisdictional floor.  It is a rule of statutory interpretation that guides our reading of any statute limiting federal court jurisdiction to review administrative action, including by limiting our review of non-discretionary factual determinations.  See Kucana, 558 U.S. at 251, 130 S. Ct. at 839.

St. Cyr does not support the majority's reasoning.  In St. Cyr, the Supreme Court considered whether portions of the Antiterrorism and Effective Death Penalty Act of 1996 and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") "stripped the courts of jurisdiction to decide the question of law presented by respondent's habeas corpus application."  St. Cyr, 533 U.S. at 298, 121 S. Ct. at 2278.  Applying the canons favoring judicial review and constitutional avoidance, it concluded that the disputed statutes did not withdraw the power of federal courts to review such questions.  Id. at 305, 121 S. Ct. at 2282.  Whether those statutes withdrew jurisdiction to review findings of fact was not before the Court.  Thus, it is unsurprising the Court preserved only the authority to review questions of law.  Nothing in St. Cyr, or any other decision I am aware of, implies that preserving review of questions of law independently satisfies the presumption of judicial review of agency action.

which is required by the narrowest of several possible meanings of the words used." Id. (quotation marks omitted).

Ignoring the guideposts of the strong presumption of judicial review and the narrow interpretation of deportation statutes, the majority sets off on the wrong path entirely. Since we are not legislators writing laws to enforce our own views, our job in interpreting the jurisdiction-stripping provisions of the INA is to determine the degree to which Congress clearly intended to remove this Court's ability to review executive action. In fact, "[s]eparation-of-powers concerns . . . caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain." Kucana, 558 U.S. at 237, 130 S. Ct. at 831. The following discussion demonstrates ambiguity within the text of § 1252(a)(2)(B). I believe my narrower reading of the statute (allowing more judicial review) resolves this ambiguity better than the broad interpretation (allowing much less judicial review) given it by the majority. I do not say that my narrow reading is the only possible one. But it is certainly a natural and available interpretation. Thus, absent clear evidence to the contrary, and with the presumption in favor of judicial review as well as the presumed narrow reading of removal statutes, it is the interpretation we must adopt. With this in mind, I turn to the text of the statute.

## III.

Section 1252(a)(2)(B) is titled "Denials of discretionary relief." It has two subsections. Subsection (i) strips courts of jurisdiction to review "any judgment regarding the granting of relief" under §§ 1182(h), 1182(i), 1229b, 1229c, or 1255. Each of those five enumerated sections of the INA describes a form of relief that may only be granted in the discretion of the Attorney General.[3] Subsection (ii) strips jurisdiction to review "any other decision or action . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Thus, I read § 1252(a)(2)(B) to say that subsection (i) strips courts of jurisdiction to review only discretionary decisions related to eligibility and the granting of relief under any of the five statutes listed there. Then, subsection (ii) strips courts of jurisdiction to review any other decisions that are explicitly specified to be "discretionary" in the INA.[4]

---

[3] See 8 U.S.C. § 1182(h) ("The Attorney General may, in his discretion, waive the application of subparagraphs . . . [of this section]."); § 1182(i)(1) ("The Attorney General may, in the discretion of the Attorney General, waive the application of clause (i) of subsection (a)(6)(C) [of this section]."); § 1229b(b)(1) ("The Attorney General may cancel removal . . . ."); § 1229c(a)(1) ("The Attorney General may permit an alien voluntarily to depart the United States . . . ."); § 1255(a) ("The status of an alien . . . may be adjusted by the Attorney General, in his discretion, and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . .").

[4] Subsection (ii) does not apply Mr. Patel's petition for review and its meaning is not in dispute here.

No one disputes that § 1252(a)(2)(B) removes our jurisdiction to review the ultimate discretionary decision of the Attorney General about whether to grant the five forms of relief enumerated in subsection (i).  But the majority reads the statute to do much more than that.  There are often many factual and legal questions that must be decided in determining whether a person is even eligible for discretionary relief.  And the majority opinion says § 1252(a)(2)(B) leaves us no jurisdiction to review any of those factual findings made by immigration judges in deciding this eligibility question.  See Maj. Op. at 24–25.  Under the majority's interpretation, our Court has jurisdiction to review only legal and constitutional questions under the jurisdiction-restoring provisions of § 1252(a)(2)(D).

But the statute does not require such a diminished role for federal courts.  First, when the statute removes our jurisdiction to review "any judgment regarding the granting of relief," the word "judgment" refers to exercises of judgment.  It does not naturally include findings of fact.  The INA simply does not use the word "judgment" to convey all the meanings given it in the majority opinion.  Second, the adjacent statutory text supports involvement of the courts in some of the fact-finding related to eligibility determinations.  It shows that where Congress intended to eliminate all review other than legal and constitutional error, it knew how to do so.  And reading "judgment" to so broadly inhibit judicial review, as the majority does here, renders superfluous other adjacent statutory language.  Third,

the structure of the INA and of removal proceedings weigh heavily against

interpreting § 1252(a)(2)(B) as eliminating all jurisdiction of this Court to review

basic findings of fact.  Perhaps it is these reasons that have led all but one of our

sister circuits who have considered this issue to conclude that § 1252(a)(2)(B) does

not eliminate review of factual or legal determinations related to eligibility for

discretionary relief.  See Singh v. Gonzales, 413 F.3d 156, 160 n.4 (1st Cir. 2005);

Rodriguez v. Gonzales, 451 F.3d 60, 62 (2d Cir. 2006) (per curiam); Mendez-

Moranchel v. Ashcroft, 338 F.3d 176, 178 (3d Cir. 2003); Garcia-Melendez v.

Ashcroft, 351 F.3d 657, 661 (5th Cir. 2003); Aburto-Rocha v. Mukasey, 535 F.3d

500, 502 (6th Cir. 2008); Iddir v. INS, 301 F.3d 492, 497 (7th Cir. 2002); Ortiz-

Cornejo v. Gonzales, 400 F.3d 610, 612 (8th Cir. 2005); Montero-Martinez v.

Ashcroft, 277 F.3d 1137, 1144 (9th Cir. 2002); Sabido Valdivia v. Gonzales, 423

F.3d 1144, 1149 (10th Cir. 2005).[5]  I hoped this Court would join the majority of

our sister circuits.

## A.

I first turn to the meaning of the word "judgment."  Again,

§ 1252(a)(2)(B)(i) removes our jurisdiction to review "any judgment regarding the

---

[5] The Fourth Circuit has reached a similar conclusion to that of the majority.  See Jean v. Gonzales, 435 F.3d 475, 480–81 (4th Cir. 2006).  The D.C. Circuit has not yet taken up this question.

granting of relief" under five specified sections of the INA. The majority thinks the meaning of this word tells us quite a lot about the scope of our jurisdiction. But "judgment" is not defined in the statute and, in ordinary conversation, it can convey different meanings.

"In determining the meaning of a statutory provision, we look first to its language, giving the words used their ordinary meaning." Artis v. District of Columbia, 583 U.S. ___, 138 S. Ct. 594, 603 (2018) (quotation marks omitted). The INA does not define the term "judgment." Montero-Martinez, 277 F.3d at 1141. And at the time § 1252(a)(2)(B)(i) was written, Black's Law Dictionary gave many definitions for the word, including: "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination"; "[t]he final decision of the court resolving the dispute and determining the rights and obligations of the parties"; "conclusion[s] of law upon facts found or admitted by the parties"; and the "[d]etermination of a court of competent jurisdiction upon matters submitted to it." Judgment, Black's Law Dictionary (6th ed. 1990). Other contemporary dictionaries also swept broadly. They included definitions such as "the sentence of a court of justice, a judicial decision or order in court," Judgment, Oxford English Dictionary (2nd ed. 1989); "a formal utterance or pronouncing of an authoritative opinion after judging," Judgment, Webster's Third New

64

International Dictionary (1993); and "the mental or intellectual process of forming an opinion or evaluation by discerning and comparing" or "an opinion or estimate so formed," id.

The majority says these definitions fall into two categories: (1) final decisions or conclusions of a court based on the application of law to fact and (2) any decision reached by a court.  Maj. Op. at 28.  But a judgment can also be the exercise of discretion.  See Montero-Martinez, 277 F.3d at 1144 (holding that the word "judgment" could mean "a decision involving the exercise of discretion" (quotation mark omitted)).  This idea is supported by definitions like the "process of forming an opinion or evaluation by discerning and comparing."  Judgment, Webster's Third New International Dictionary (1993).  And I do not agree with the majority that "any decision" is the only natural meaning in the context of § 1252(a)(2)(B)(i).  In particular, I reject the majority's definition that extends the meaning of the word "judgment" to include findings of fact.  This seems to me a highly eccentric use of the word.[6]

---

[6] The majority cites a sentence from Nasrallah v. Barr, 590 U.S. ___, 140 S. Ct. 1683 (2020), saying that under § 1252(a)(2)(B) "a noncitizen may not bring a factual challenge to orders denying discretionary relief."  See id. at 1693–94; Maj. Op. at 25.  However, the Court made this statement (without attendant analysis) only in response to a potential counterargument regarding the scope of a separate jurisdiction stripping statute, § 1252(a)(2)(C).  See Nasrallah, 140 S. Ct. at 1693–94.  And as we note, see infra at 52, the case the Supreme Court cited for this proposition, Kucana, actually supports the opposite principle—that is, that § 1252(a)(2)(B) strips jurisdiction of only discretionary decisions.  The question we address today was not before the

Take, for example, the decision of whether to grant cancellation of removal under § 1229b(a), which is one of the five forms of discretionary relief listed in § 1252(a)(2)(B)(i). To be eligible for cancellation of removal, a permanent resident must show that she has been a lawfully admitted permanent resident for at least five years; she has resided continuously in the United States for seven years after being admitted; and she has not been convicted of an aggravated felony. 8 U.S.C. § 1229b(a). These eligibility requirements are simply a matter of fact: either you've been in the United States for five years, or you haven't. And a recitation of this fact (one way or the other) would not naturally be described as a "judgment." Of course, I can't say that no one has ever used the word "judgment" to mean "findings of fact," but it does not reflect the most natural understanding of the term.

---

Court in Nasrallah. And the Court did clarify that its decision "has no effect on judicial review of those discretionary determinations" described in § 1252(a)(2)(B). Id. The statement quoted by the majority is therefore indisputably dictum. Dicta, and especially Supreme Court dicta, can be persuasive but we are not required to follow it where "the point now at issue was not fully debated." Kirtsaeng v. John Wiley & Sons, Inc., 568 U.S. 519, 548, 133 S. Ct. 1351, 1368 (2013) (declining to follow "dictum contained in a rebuttal to a counterargument"). Thus, this statement from Nasrallah is properly viewed in light of the facts that: the Supreme Court conducted no analysis of § 1252(a)(2)(B) in connection with its mention of factual challenges; the Court referenced Kucana, which seems to link the jurisdiction stripping to discretionary decisions only; and nine circuits say § 1252(a)(2)(B) does not strip jurisdiction of federal courts to review fact-finding related to eligibility. While ordinarily we find Supreme Court dicta to be persuasive, for these reasons the quotation from Nasrallah is less so.

And the INA uses the word "judgment" in other places, where its meaning is never as broad as that assigned to it by the majority opinion. It is a well-established canon of interpretation that we presume the same word is intended to have the same meaning when used in different parts of the same act. Envtl. Def. v. Duke Energy Corp., 549 U.S. 561, 574, 127 S. Ct. 1423, 1432 (2007). The word "judgment" is used thirteen times in the INA. See Montero-Martinez, 277 F.3d at 1141 n.5. When not referring to the final decision of a court, the term "judgment" is used exclusively to refer to discretionary decisions, including: the Attorney General's "judgment" of whether to establish DHS offices in foreign countries, 8 U.S.C. § 1103(a)(7); the Attorney General's "discretionary judgment[s]" regarding the apprehension and detention of noncitizens, id. § 1226(e); the Attorney General's "discretionary judgment" about whether to grant asylum, id. § 1252(b)(4)(D); and the Attorney General's judgment of whether removal of a noncitizen to the country of the noncitizen's designation would "impair the obligation of the United States under any treaty . . . or otherwise adversely affect the foreign policy of the United States," id. § 1537(b)(2)(A). I'm aware the Supreme Court has also cautioned that "most words have different shades of meaning and consequently may be variously construed," even when used in the same statute. Duke Energy Corp., 549 U.S. at 574, 127 S. Ct. at 1432 (quotation marks omitted) (alteration adopted). But the fact that the INA never uses the word

judgment" to mean "any decision" or "findings of fact" surely weighs against

imposing those meanings on the text of § 1252(a)(2)(B).[7]

The surrounding statutory language casts further doubt on the majority's

conclusion.  The title of the subsection, "Denials of discretionary relief," suggests

that Congress intended to preclude review of the ultimate discretionary decision, as

opposed to the factual findings that must be made prior to the exercise of that

discretion.  See St. Cyr, 533 U.S. at 308–09, 121 S. Ct. at 2284 (holding that the

title of a statute cannot limit the plain meaning of the text but can shed light on

ambiguous words or phrases).

Also, if we construe "judgment" to mean "any decision," this would render

the accompanying subsection, § 1252(a)(2)(B)(ii), superfluous.  If "judgment"

includes all decisions, discretionary and non-discretionary, then there would be no

need for subsection (ii) to preclude review of "other decision[s] or action[s]" which

---

[7] It is true that in some places in the INA, Congress used the phrase "discretionary judgment," rather than just the word "judgment."  I do not think the use of this phrase in other parts of the statute tells us much about what Congress meant when it used the word "judgment" alone.  The sections of the INA that use the phrase "discretionary judgment" do not appear in statutes with similar construction as § 1252(a)(2)(B), and were not made part of the statute at the same time.  See Gomez-Perez v. Potter, 553 U.S. 474, 486, 128 S. Ct. 1931, 1940 (2008) (holding that the inference from negative implication is strongest when "the relevant statutory provisions were considered simultaneously when the language raising the implication was inserted" (quotation marks omitted)); City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 435–436, 122 S. Ct. 2226, 2234 (2002) (holding that presumptions from negative implication "grow[] weaker with each difference in the formulation of the provisions under inspection.").  But I do think it significant that neither the phrase "discretionary judgment" nor the word "judgment" alone are ever used to mean "findings of fact" or "any decision."

are specified as discretionary.  See Montero-Martinez, 277 F.3d at 1143 n.7; Torres v. Lynch, 578 U.S. __, 136 S. Ct. 1619, 1628 n.8 (2016) (noting courts ordinarily "assum[e] that Congress, when drafting a statute, gives each provision independent meaning").

Likewise, there are adjacent subsections of the statute, in which Congress clearly meant to strip courts of jurisdiction over all matters related to an immigration order or decision, and did so unequivocally and without ambiguity. Section 1252(a)(2)(A)(i), which immediately precedes § 1252(a)(2)(B), says that "no court shall have jurisdiction to review . . . any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." § 1252(a)(2)(A)(i) (emphasis added).  The jurisdiction-stripping effect of this statute is similar to the effect the majority would give § 1252(a)(2)(B): it precludes all judicial review of any factual determinations or applications of law to fact.  See Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. ___, 140 S. Ct. 1959, 1966 (2020).  Congress also spoke clearly to remove jurisdiction elsewhere in § 1252 of the INA.  Section 1252(a)(2)(C) states "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense" under certain enumerated sections.  In contrast,

69

§ 1252(a)(2)(B)(i) precludes review of only "any judgment regarding the granting of relief."

An examination of the language of these three adjacent sections shows that if Congress wanted § 1252(a)(2)(B) to eliminate review over all decisions underlying the grant of discretionary relief, it knew exactly how to do it. And it did not do so. See Montero-Martinez, 277 F.3d at 1143 (holding that the contrast between "[t]he broad and all-inclusive scope of subsection (A)(i)" and "the far more limited language of (B)(i)" show that Congress intended (B)(i) to apply only to discretionary decisions). This comparison also shows that when Congress wanted to refer to a broad range of decisions that include findings of fact, it did not use the word "judgment." Instead it used the words "decision" or "determination," which are significantly broader terms. This strongly suggests that § 1252(a)(2)(B)(i) limits review only of decisions left to the discretion of the Attorney General, as opposed to the factual findings related to eligibility.

Also worthy of note, the Supreme Court interpreted the scope of § 1252(a)(2)(B)(ii) in Kucana, 558 U.S. 233, 130 S. Ct. 827. In doing so, it strongly suggested that § 1252(a)(2)(B)(i) only applies to discretionary decisions. See id. at 246. The Supreme Court said that "[e]ach of the statutory provisions referenced in clause (i) address a different form of discretionary relief from

70

removal, . . . and each contains language indicating that the decision is entrusted to the Attorney General's discretion." Id.  The Supreme Court then explained:

> Congress added in clause (ii) a catchall provision covering 'any other decision . . . the authority for which is specified under this subchapter.'  The proximity of clauses (i) and (ii), and the words linking them—'any other decision'— suggests that Congress had in mind decisions of the same genre, i.e., those made discretionary by legislation. The clause (i) enumeration, we find, is instructive in determining the meaning of the clause (ii) catchall.  Read harmoniously, both clauses convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute.

Id. at 246–47 (emphasis added).  Though I acknowledge this passage is dicta, the discussion is closely related to the statute and the concepts before us here.  Kucana essentially tells us that § 1252(a)(2)(B)(i) applies only to discretionary decisions and it does so in a context that provides persuasive authority to guide us here.

Because of the presumption in favor of judicial review as well as the rule favoring narrow interpretation of deportation-related laws, it is not necessary for me to show that majority's understanding of "judgment" is impossible.  I must show only that their interpretation barring judicial review is not required.  And this statute just as naturally accepts the narrower definition I have given it.  See Montero-Martinez, 277 F.3d at 1144 ("The meaning of 'judgment'

71

in § 1252(a)(2)(B)(i) is unclear because the statute does not define the term, and it could mean 'any decision' of the BIA, or it could mean 'a decision involving the exercise of discretion.'") In light of the ambiguity of this statutory provision, the statute does not clearly remove this Court's jurisdiction to review factual findings related to eligibility for the enumerated forms of discretionary relief.

## B.

The best interpretation of § 1252(a)(2)(B) is that it excludes review of decisions that involve the exercise of discretion. I recognize that this may include both the final decision of whether to grant any of the five enumerated forms of relief, as well as some other discretionary findings related to eligibility for relief. But it does not include findings of fact that require no discretionary evaluation from the factfinder. This narrower interpretation, which has been adopted by almost every circuit court, best comports with the structure and language of the INA. See supra at 62. It also best aligns with our own precedent. See Gonzalez-Oropeza v. U.S. Att'y Gen., 321 F.3d 1331, 1332 (11th Cir. 2003) (per curiam) (holding that § 1252(a)(2)(B) does not prevent review of "non-discretionary legal decisions that pertain to statutory eligibility for discretionary relief" (citing Al Najjar v. Ashcroft, 257 F.3d 1262, 1298 (11th Cir. 2001)); Mejia Rodriguez v. Dep't of Homeland Sec., 562 F.3d 1137, 1143 (11th Cir. 2009) (per curiam) (holding that "simply because the Secretary has the ultimate discretionary authority

72

to grant an immigration benefit does not mean that every determination . . . regarding an alien's application for that benefit is discretionary, and hence not subject to review"); Alvarado v. U.S. Att'y Gen., 610 F.3d 1311, 1314 (11th Cir. 2010) (holding that the Court had jurisdiction to review the IJ's conclusion that respondent had failed to timely request voluntary departure because that was a "non-discretionary judgment regarding . . . statutory eligibility to request discretionary relief").

1.

A review of the history and structure of removal proceedings is helpful to clarify the meaning of "discretionary decisions." Courts have long recognized that within immigration proceedings there is "a distinction between eligibility for discretionary relief, on the one hand, and the favorable exercise of discretion, on the other hand." St. Cyr, 533 U.S. at 307, 121 S. Ct. at 2283; Jay v. Boyd, 351 U.S. 345, 353, 76 S. Ct. 919, 924 (1956) (distinguishing eligibility for relief from the decision about whether to grant that relief); Judulang v. Holder, 565 U.S. 42, 48, 132 S. Ct. 476, 481 (2011) (describing two-step process of determining eligibility for discretionary relief and then determining whether to grant that relief). The first step, eligibility for relief, is generally "governed by specific statutory standards" for determining who may receive it. St. Cyr, 533 U.S. at 307–08, 121 S. Ct. at 2283 (quoting Jay, 351 U.S. at 353, 76 S. Ct. at 924); see also Zadvydas v.

73

Davis, 533 U.S. 678, 688, 121 S. Ct. 2491, 2497 (2001) ("The aliens here . . . do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the [INA]. And the extent of that authority is not a matter of discretion.").

A noncitizen faces the discretionary decision of the immigration authorities only once she has established that the statute makes her eligible for that discretionary form of relief. Foti v. INS, 375 U.S. 217, 228 n.15, 84 S. Ct. 306, 313 n.15 (1963) (holding that since an immigration officer "cannot exercise his discretion . . . until he finds the alien statutorily eligible . . . , a finding of eligibility and an exercise of (or refusal to exercise) discretion may properly be considered as distinct and separate matters"); McGrath v. Kristensen, 340 U.S. 162, 165, 71 S. Ct. 224, 227 (1950) ("Eligibility is a statutory prerequisite to the Attorney General's exercise of his discretion to suspend deportation in this case."). Unlike eligibility, the decision about whether to grant a form of relief for which a noncitizen is eligible "is in all cases a matter of grace," and in most cases is not guided by clear statutory standards. See St. Cyr, 533 U.S. at 307–08, 121 S. Ct. at 2283 (quotation marks omitted); Kucana, 558 U.S. at 247, 130 S. Ct. at 837 (describing the enumerated forms of relief in § 1252(a)(2)(B)(i) as "matter[s] of grace" (quotation marks omitted)).

74

Mr. Patel's case illustrates the distinction between eligibility for relief and the discretionary decision of whether to grant that relief. Mr. Patel entered the United States without inspection but applied for adjustment of status under 8 U.S.C. § 1255(i). Section 1255(i) provides that the Attorney General "may adjust the status" of a noncitizen who entered the United States without inspection to that of a lawful permanent resident. § 1255(i)(1)(A)(i), (2). In order to be eligible for the Attorney General's exercise of his discretion to make that adjustment, the applicant carries the burden of showing he meets a number of criteria. He must show he is eligible for an immigrant visa which is immediately available. § 1255(i)(2)(B). For this, he is either eligible as a matter of fact, or he is not. He must show he is admissible to the United States for permanent residence. § 1255(i)(2)(A). Again, he is either admissible, or he is not. And an applicant who, like Mr. Patel, is the beneficiary of a labor certification must also show that he was physically present in the United States on December 21, 2000. § 1255(i)(1)(C). For this as well—he was either in the United States on December 21, 2000 or he was not. No discretion is required to make these decisions. But once he has established that he meets all of these eligibility criteria, the Attorney General then "may" grant his application. As the word "may" indicates, and as § 1252(a)(2)(B)'s reference to § 1255 confirms, the discretionary decision is the decision of whether to grant the request of an eligible applicant to adjust status.

75

Characteristically, the statute carefully defines the conditions of <u>eligibility</u> for adjustment but gives no guidance as to which eligible candidates should receive this discretionary relief.  That, of course, is left to the discretion of the Attorney General.[8]

In examining this area of the law, I recognize that some findings about eligibility are also left to the discretion of the Attorney General.  In this regard, the majority offers the example of a noncitizen seeking cancellation of removal under § 1229b(b).  That person is required to show (A) continuous physical presence for not less than 10 years; (B) good moral character; (C) that he has not been convicted of certain criminal offenses; and (D) that removal would result "in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."  8 U.S.C. § 1229b(b).  For the factfinder, there is surely discretion involved in deciding whether a person's absence from the country would cause "exceptional and extremely unusual hardship" on their family members.  Two fair-minded factfinders could look at the same facts and make a different finding.  Perhaps as a result, this Court and others have consistently held that the decision about whether

---

[8] The majority says that enabling review of non-discretionary decisions related to eligibility would render § 1252(a)(2)(B)(i) meaningless by "effectively allow[ing] for review of the grant of relief."  Maj. Op. at 48.  But of course, the narrow reading of the statute I propose here would still preclude review of all discretionary decisions, including the ultimate decision of whether to grant discretionary relief to eligible respondents.

removal would result in "exceptional and extremely unusual hardship" is one left to the discretion of the Attorney General, and so is not subject to review under § 1252(a)(2)(B).  See Gonzalez-Oropeza, 321 F.3d at 1333; Romero-Torres v. Ashcroft, 327 F.3d 887, 891 (9th Cir. 2003); Mendez-Moranchel v. Ashcroft, 338 F.3d 176, 179 (3d Cir. 2003).  Unlike non-discretionary factual findings (like whether the respondent was present in the United States on a certain date), assessing "exceptional and extremely unusual hardship" is a "subjective question that depends on the value judgment of the person or entity examining the issue." Romero-Torres, 327 F.3d at 891 (quotation marks omitted).

There is a clear difference between straightforward factual findings and discretionary judgments.  With this in mind, the narrower interpretation of "judgment" as "discretionary decision" produces a more coherent reading of the statute as a whole.  In drafting subsections (i) and (ii), "Congress had in mind decisions of the same genre, i.e., those made discretionary by legislation," Kucana, 558 U.S. at 246–47, 130 S. Ct. at 836.  Under this interpretation, subsection (i) would exclude from our review discretionary judgments, even including eligibility requirements that call upon the factfinder to employ discretion, and the ultimate decision about whether to grant relief, and subsection (ii) would function as a "catchall" clause to remove our jurisdiction over those discretionary decisions other than the granting of relief under subsection (i).  This reading harmonizes the

77

common meaning of "judgment," the adjacent statutory language, and longstanding precedent recognizing the distinction between discretionary and non-discretionary decisions.  Certainly, this interpretation is at least as plausible as that given by the majority.  And since we must construe the immigration statutes in favor of judicial review absent clear statutory language to the contrary, the ambiguity in § 1252(a)(2)(B) does not allow the broader removal of our jurisdiction mandated by the majority opinion.

The majority claims the distinction between discretionary and non-discretionary determinations has no statutory basis.  Maj. Op. at 35–36.  Yet this distinction has been repeatedly recognized by the Supreme Court.  And as demonstrated here, it also emerges naturally from the structure of removal proceedings, the text of § 1252(a)(2)(B)(i), and the uniquely discretionary nature of some eligibility determinations left to the discretion of the Attorney General.  But the majority does not stop there.  It goes further to argue that there is no difference between discretionary and non-discretionary eligibility decisions, since all application of law to fact "will necessarily involve judgment."  Maj. Op. at 38 (quotation marks omitted).  But this argument ignores the obvious differences between such straightforward eligibility-related factual findings as the length of time of continuous presence in the United States, and the more nuanced findings required in deciding whether there is "exceptional and extremely unusual

78

hardship" in any given case. The first determination is self-explanatory and can most often be easily verified as either correct or incorrect. But the same cannot be said of the second. That "hardship" determination requires the Attorney General to use judgment to place someone in a subjective category that lacks clear, self-explanatory boundaries. See Moosa v. INS, 171 F.3d 994, 1013 (5th Cir. 1999) (noting that the term "extreme hardship" is "not self-explanatory" and that reasonable people could differ as to its construction (quotation marks omitted)). There is no need for "mental gymnastics" to see the difference between these two categories, as the majority claims. Maj. Op. at 39. This Court and our sister circuits have been ably distinguishing them for decades. See, e.g., id.; Gonzalez-Oropeza, 321 F.3d at 1332–33.

I also reject the view of the majority that the distinction between discretionary and non-discretionary eligibility findings is illogical as a matter of policy. Maj. Op. at 38–39. There is good reason to leave discretionary decisions in the hands of the Attorney General while maintaining appellate review of non-discretionary findings. For example, when interpreting the phrase "extreme hardship" in a predecessor statute to § 1229b, the Supreme Court recognized that "[t]he Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so" and that imposing a different interpretation would "shift the administration of hardship deportation

79

cases from the Immigration and Naturalization Service to this court." INS v. Jong Ha Wang, 450 U.S. 139, 145–46, 101 S. Ct. 1027, 1031–32 (1981) (per curiam). Similarly, we do not review the ultimate decision of whether to grant discretionary relief because it is not bounded by clear statutory standards and requires the application of the Attorney General's subjective judgment. See St. Cyr, 533 U.S. at 307–08, 121 S. Ct. at 2283. But there is no good reason to commit straightforward factual findings to the unreviewable discretion of the executive branch. After all, those are questions about which the Attorney General simply might be wrong.

2.

The majority says we must read § 1252(a)(2)(B)(i) in conjunction with § 1252(a)(2)(D). Maj. Op. at 30–31, 39–40. True, but in doing so, I draw the conclusion opposite from that of the majority. Congress added § 1252(a)(2)(D) through the REAL ID Act of 2005 to restore circuit courts' jurisdiction to review legal and constitutional claims in immigration cases. REAL ID Act of 2005, Pub. L. No. 109-13, § 106(a), 119 Stat. 231, 310 (2005). Its purpose was to channel those cases out of district courts and into the appellate courts, thereby avoiding "'bifurcated and piecemeal litigation.'" Balogun v. U.S. Att'y Gen., 425 F.3d 1356, 1359–60 (11th Cir. 2005) (quoting 151 Cong. Rec. H2813, H2873). This was a response to the Supreme Court's decision in St. Cyr, which held that

80

§§ 1252(a)(1), (a)(2)(C), and (b)(9) did not strip the district courts of jurisdiction to consider habeas petitions under 28 U.S.C. § 2241.  See Chen v. U.S. Dep't of Justice, 471 F.3d 315, 327 (2d Cir. 2006) (describing legislative history of § 1252(a)(2)(D) (citing H.R. Rep. No. 109-72, at 174–75 (2005))).

Nothing in the text or legislative history of § 1252(a)(2)(D) suggests that it was meant to expand the jurisdiction-stripping effect of § 1252(a)(2)(B).  In fact, the legislative history weighs against the majority's interpretation.[9]  When Congress passed the REAL ID Act in 2005, many circuits were already reading § 1252(a)(2)(B) narrowly, so as to permit judicial review of straightforward factual findings about eligibility.  In the face of this precedent, Congress could have amended § 1252(a)(2)(B) to stop this type of review.  But it did not.  Rather, it expanded the jurisdiction of courts to review legal and constitutional error that had previously been barred.  Thus, Congress's actions strongly suggest it did not intend § 1252(a)(2)(B) to strip courts of this jurisdiction over anything other than the discretionary decision related to certain forms of relief.  See Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349, 104 S. Ct. 2450, 2455 (1984) ("The congressional intent necessary to overcome the presumption [favoring judicial

---

[9] We review legislative history only when there is ambiguity in the text of the statute. Harris v. Garner, 216 F.3d 970, 976–77 (11th Cir. 2000) (en banc).  I have set out why I believe there is such ambiguity here.

81

review] may also be inferred from contemporaneous judicial construction barring review and the congressional acquiescence in it.").

## C.

Finally, I must address another serious problem with the majority's interpretation of § 1252(a)(2)(B). When it sweeps all factual findings and discretionary judgments into § 1252(a)(2)(B), the majority opinion gives the government the ability to insulate agency findings from judicial review, solely by the way its charges a case. This is not proper. In Kucana, the Supreme Court told us that IIRIRA, which added § 1252(a)(2)(B) to the INA, "did not delegate to the Executive authority to" "pare[] back judicial review." Kucana, 558 U.S. at 252–53, 130 S. Ct. at 840. Since the majority's interpretation would allow the Attorney General and his delegates to do just that, it is directly at odds with Supreme Court precedent.

Removal proceedings have two stages. First, the government has the burden of establishing, by clear and convincing evidence, that the noncitizen is removable. Bigler v. U.S. Att'y Gen., 451 F.3d 728, 732 (11th Cir. 2006) (per curiam). The grounds for removability include both grounds of inadmissibility, 8 U.S.C. § 1182(a), and grounds of deportation, 8 U.S.C. § 1227(a). See Judulang, 565 U.S. at 45–46, 132 S. Ct. at 479 (describing the evolution of modern removal

proceedings and explaining that, since 1996, there has been a unified procedure for both excluding and deporting noncitizens). Then, if the government proves removability, or the noncitizen concedes it, the noncitizen may apply for various forms of discretionary relief. See Matovski v. Gonzales, 492 F.3d 722, 727 (6th Cir. 2007). These discretionary forms of relief include seeking an adjustment of status, as Mr. Patel did here. Id. For this, he bears the burden of proving eligibility. Id.

To be eligible for some forms of discretionary relief, such as adjustment of status under § 1255(i), the applicant must be "admissible." 8 U.S.C. § 1255(a)(2). But being inadmissible is also an independent ground for removal. So, in some cases, a noncitizen could be both removable and ineligible for discretionary relief based on the same facts. Now under the interpretation the majority gives to § 1252(a)(2)(B), our jurisdiction to review whether a noncitizen is admissible will, in many cases, depend entirely on the Attorney General's charging decision. If the government charges a noncitizen as removable for being inadmissible, and the IJ finds the noncitizen inadmissible, our Court will retain jurisdiction to review that finding under § 1252(b)(9). That provision grants us jurisdiction to review "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States." But if the government does not charge the noncitizen as removable for being inadmissible, and the IJ finds the noncitizen

83

ineligible for discretionary relief because he is inadmissible, our Court will lack jurisdiction to review that finding.  In both cases, the IJ will have found the noncitizen inadmissible, but the government's charging decision alone will have established the scope of our jurisdiction.

And that is exactly what happened to Mr. Patel.  The government issued Mr. Patel an NTA that charged him with being removable for being an alien present in the United States without being admitted or paroled, pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).  However, the NTA did not charge him with being inadmissible for falsely representing his citizenship under § 1182(a)(6)(C)(ii).  Had it done so, it is indisputable that the IJ's factfinding at issue here would have been reviewable.  Instead, the government raised inadmissibility only in opposition to Mr. Patel's application for adjustment of status.  As a result, and because today's majority ruling says we now cannot review any factual determinations related to Mr. Patel's eligibility for adjustment of status, the government's charging decision has fully insulated from judicial review the IJ's finding that Mr. Patel is inadmissible.

This outcome is at odds with Kucana.  In Kucana, the Supreme Court interpreted § 1252(a)(2)(B)(ii) as precluding judicial review of decisions made discretionary by statute, but not of decisions made discretionary by agency regulation.  558 U.S. at 252–53, 130 S. Ct. at 840.  It held that "[b]y defining the various jurisdictional bars by reference to other provisions in the INA itself,

84

Congress ensured that it, and only it, would limit the federal courts' jurisdiction."

Id. at 252, 130 S. Ct. at 839.  Giving the executive branch a "free hand to shelter its

own decisions from abuse-of-discretion appellate court review simply by issuing a

regulation declaring those decisions 'discretionary'" would be an "extraordinary

delegation of authority" which "cannot be extracted from the statute Congress

enacted."  Id. at 252, 130 S. Ct. at 840.

If § 1252(a)(2)(B) does not permit the executive branch to insulate its

decisions from review by regulation, surely it does not allow it to do the same

through the exercise of its immigration charging discretion.  Indeed, the Supreme

Court has specifically disapproved of leaving eligibility for discretionary

immigration relief to "the fortuity of an individual official's [charging] decision."

Judulang, 565 U.S. at 58, 132 S. Ct. at 486.  Doing so subjects identically situated

noncitizens to different outcomes and turns deportation proceedings into a "sport

of chance."[10]  Id. at 59, 132 S. Ct. at 487 (quotation marks omitted).

---

[10] The majority accepts this delegation of authority as permissible because
§ 1252(a)(2)(B)(i) limits review of decisions related to the grant of discretionary relief, not
removability.  Maj. Op. at 40 n.26.  But Kucana was similar to Mr. Patel's case.  In Kucana, the
Supreme Court addressed its jurisdiction to review denials of motions to reopen, an arguably
discretionary form of relief.  558 U.S. at 242, 130 S. Ct. at 834.  It did not address determinations
related to removability.  Id.  The Court held that the executive branch may not render decisions
on motions to reopen unreviewable under § 1252(a)(2)(B)(ii) even by promulgating regulations
categorizing those decisions as discretionary.  Id. at 252–253, 130 S. Ct. at 840.  I am therefore
not persuaded by the majority's argument that we may delegate such extraordinary authority to
the executive branch even in the context of discretionary relief.

Today, the majority gives precisely this extraordinary degree of authority to immigration officials.  The INA or Supreme Court precedent do not permit this.  And this startling result offers an independent reason to reject the rule adopted by the majority here.

## IV.

In holding the IJ's factual findings unreviewable, the majority ignores a narrower interpretation of § 1252(a)(2)(B)(i) that is at least as plausible as its own.  My narrow interpretation better fits the natural meaning of "judgment" and its use in the INA; the legislative history of the § 1252(a)(2)(B) and (D); and the structure of removal proceedings.  And it does not vest the executive branch with the authority to insulate its own decisions from judicial review based solely on charging decisions.  I understand § 1252(a)(2)(B)(i) to permit us to review the IJ's finding that Mr. Patel's false claim of citizenship was made with subjective intent.

86