[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13105
Non-Argument Calendar

_____

Agency No. A200-277-155

PATRICIA JANNET CUAUHTENANGO-ALVARADO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(May 10, 2021)

Before MARTIN, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Patricia Cuauhtenango-Alvarado seeks review of the Board of Immigration Appeals's ("BIA") order affirming the immigration judge's ("IJ") denial of her request for cancellation of removal. Cuauhtenango-Alvarado challenges the IJ's determination that she failed to prove her two U.S. citizen sons would suffer exceptional and extremely unusual hardship upon her removal to Mexico. After careful review, we grant her petition and remand to the BIA to reconsider her application for cancellation of removal.

## I.

Cuauhtenango-Alvarado, a native and citizen of Mexico, has resided in the United States since 2001. In 2011, the government served Cuauhtenango-Alvarado with a notice to appear charging her as removable for being in the United States without authorization. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Cuauhtenango-Alvarado conceded removability and applied for cancellation of removal, *see* 8 U.S.C. § 1229b(b)(1), asserting that her removal would result in exceptional and extremely unusual hardship to her two U.S. citizen children, who at the time were eleven and eight years old.

Cuauhtenango-Alvarado explained that if she were removed, she would have to take her U.S. citizen children with her because they had nowhere else to stay in the United States. She is a single mother and her U.S. citizen children's father is not present in their lives. If removed to Mexico, she would not be able to stay with her

family, as she suffered sexual abuse as a minor at the hands of her step-father who still lives with her mother. Cuauhtenango-Alvarado's children do not speak, read, or write in Spanish. They have only ever lived in the United States and Cuauhtenango-Alvarado herself has lived here her entire adult life here. Beyond that, her youngest child suffers from severe communication problems; he cannot communicate verbally and communicates only with his mother or siblings. He receives speech therapy to help him with this disability. Cuauhtenango-Alvarado also testified credibly that the region she is from in Mexico is very dangerous and submitted a Human Rights Watch Report documenting disturbing violence in Mexico including extrajudicial killings, enforced disappearances, torture, and mistreatment of people with disabilities.

The IJ first found that Cuauhtenango-Alvarado satisfied the continuous presence requirement, was of good moral character, and had no disqualifying convictions. But the IJ denied her application on the basis that she did not establish that her U.S. citizen children would suffer exceptional and extremely unusual hardship if she were removed.

The IJ reasoned that Cuauhtenango-Alvarado was resilient and would be able to adapt to and find work in Mexico. Responding to Cuauhtenango-Alvarado's arguments about poorer economic conditions and diminished educational opportunities in Mexico, the IJ, in reliance on *In re Andazola-Rivas*, 23 I. & N. Dec.

319 (BIA 2002), found that the circumstances she faced upon removal were not substantially different than what would normally be expected upon removal to a less-developed country. The BIA adopted and affirmed the IJ's decision on appeal. This petition for review followed.

## II.

The government argues that we lack subject-matter jurisdiction to review Cuauhtenango-Alvarado's petition for review. We review our subject-matter jurisdiction *de novo*. *Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221 (11th Cir. 2006).

The government says that whether or not a noncitizen establishes the "exceptional and extremely unusual hardship" factor to receive cancellation of removal is a "discretionary determination" that we are barred from reviewing. But in this regard the government misinterprets our holding in *Patel v. U.S. Attorney General*, 971 F.3d 1258 (11th Cir. 2020) (en banc). In that case, we rejected the argument that the jurisdiction stripping language in 8 U.S.C. § 1252(a)(2)(B)(i) applies to decisions that constitute the exercise of discretion. *Id.* at 1276–78 (noting that the "discretionary and non-discretionary distinction flies in the face of the statutory language.") Instead, the Court said that § 1252(a)(2)(B)(i) precludes review (when read in conjunction with §1252(a)(2)(D)) only of "*factual challenges* to denials of certain kinds of discretionary relief." *Id.* at 1276 (emphasis added).

4

The Court specifically noted that we retain jurisdiction to review constitutional and legal challenges, "*including review of mixed questions of law and fact.*" *Id.* at 1275–76 (emphasis added).

Whether or not a given set of facts amounts to "exceptional and extremely unusual hardship" is a mixed question of law and fact which we are empowered to review. It presents the exact same type of question as whether a given set of facts amounts to "torture" under the Convention Against Torture ("CAT"), which this Court has explicitly recognized is a mixed question of law and fact. *See Jean-Pierre v. U.S. Att'y Gen.*, 500 F.3d 1315, 1322 (11th Cir. 2007) (explaining that whether a course of conduct amounts to torture under CAT is a mixed question because it "requires a court to apply a legal definition to a set of undisputed or adjudicated historical facts."). Therefore, while we may not review the IJ's factual findings as to Cuauhtenango-Alvarado's application for cancellation of removal, we can review the IJ's determination that those facts do not rise to the level of "exceptional and extremely unusual hardship" for her qualifying relatives.

## III.

As we have jurisdiction to review this petition, we now turn to the merits of Cuauhtenango-Alvarado's claim. In order to establish exceptional and extremely unusual hardship to a qualifying relative, a noncitizen must show hardship that is more than we would ordinarily expect to arise as a result of removal, but this does

not require a showing that the hardship would be "unconscionable." *In Re Monreal-Aguinaga*, 23 I.&N. Dec. 56, 60 (BIA 2001). In deciding whether the noncitizen has made that showing, the BIA looks to the "ages, health, and circumstances" of any qualifying relatives, as well as whether a qualifying child has "compelling special needs in school," and, though insufficient by themselves, "[a] lower standard of living or adverse country conditions in the country of return" are also relevant factors. *Id*. at 63–64. "[T]he hardship standard is not so restrictive that only a handful of applicants, such as those who have a qualifying relative with a serious medical condition, will qualify for relief." *In re Gonzalez Recinas*, 23 I.&N. Dec. 467, 470 (BIA 2002).

Cuauhtenango-Alvarado's situation is remarkably similar to that of the noncitizen the BIA considered in *In re Gonzalez Recinas*. In that case, the BIA affirmed a grant of cancellation of removal to a single mother from Mexico who was the sole provider for her four U.S. citizen children. *Id*. at 469–470, 471. Gonzalez Recinas had no family support in Mexico and the father of her children was not actively involved in the children's lives. *Id*. at 470. Her U.S. citizen children had spent their whole lives in the United States and did not speak, write, or read Spanish. *Id*. In contrast, in *In re Andazola-Rivas*, 23 I.&N. Dec. 319 (BIA 2002), the case the IJ relied on in denying Cuauhtenango-Alvarado's application, the U.S. citizen children's father lived with the family and helped to provide for them. *Id*. at 324.

6

That is not the case for Cuauhtenango-Alvarado, whose children, similar to Gonzalez Recinas's children, would be "completely dependent on their mother's ability, not only to find adequate employment and housing, but also to provide for their emotional needs." *In re Gonzalez Recinas*, 23 I.&N. Dec. at 471. And Cuauhtenango-Alvarado has never before worked in Mexico, making her even more poorly situated to finding new work upon removal to a country she never lived in as an adult. If anything, Cuauhtenango-Alvarado presents an even more compelling case for "exceptional and extremely unusual hardship" than Gonzalez Recinas as her youngest son suffers from a communication disability, which would only worsen if he were forced to move to a country where he does not speak the language. We therefore find that Cuauhtenango-Alvarado has made a showing that her U.S. citizen children would suffer "exceptional and extremely unusual hardship" if she were removed.

As there is no dispute that Cuauhtenango-Alvarado met the other criteria for cancellation of removal, her petition is **GRANTED and REMANDED**.

BRANCH, Circuit Judge, dissenting:

Patricia Cuauhtenango-Alvarado petitions this Court for review of the Board of Immigration Appeals' ("BIA") affirmance of the denial of her application for cancellation of removal, pursuant to 8 U.S.C. § 1229b(b)(1),[1] after finding that she failed to satisfy the "exceptional and extremely unusual hardship" requirement for cancellation of removal. She argues that the undisputed facts of her case are similar to several other cases in which the BIA determined that individuals established the "exceptional and extremely unusual hardship" requirement, and that the Immigration Judge ("IJ") erred in determining otherwise. In response, the government contends we lack jurisdiction to review her petition, pursuant to the jurisdictional-stripping provision of 8 U.S.C. § 1252(a)(2)(B). The Majority disagrees, concluding that her petition presents a mixed question of law and fact that we retain jurisdiction over, pursuant to 8 U.S.C. § 1252(a)(2)(D). Because I conclude that we lack jurisdiction to review the denial of her application for

---

[1] The Attorney General may cancel removal of an alien who is inadmissible or deportable from the United States if the alien (1) has been physically present in the United States for a continuous period of not less than 10 years; (2) has been a person of good moral character during such period; (3) has not been convicted of an offense under section 8 U.S.C. §§ 1182(a)(2), 1227(a)(2), or 1227(a)(3); and (4) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a United States citizen or lawfully admitted permanent resident. *See* 8 U.S.C. § 1229b(b)(1).

cancellation of removal, I would dismiss the petition. Accordingly, I respectfully dissent.[2]

The Immigration and Nationality Act ("INA") contains a jurisdiction-stripping provision that imposes certain limits on the scope of our appellate review, 8 U.S.C. § 1252(a)(2)(B). It provides as follows:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> > (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
> > (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B). Cancellation of removal under § 1229b is one of the five enumerated categories set forth in § 1252(a)(2)(B)(i). Section 1252(a)(2)(D), however, restores our jurisdiction to review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or

---

[2] Neither party requested oral argument in this case.

questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.").

I agree with the Majority that this Court overruled its prior precedent that interpreted the jurisdictional stripping language in § 1252(a)(2)(B)(i) as precluding judicial review of discretionary determinations but retaining jurisdiction over non-discretionary determinations because that "interpretation [was] based on the predecessor version of § 1252(a)(2)(B) and [was] unmoored from the current statutory language." *See Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1262 (11th Cir. 2020) (*en banc*). Thus, the discretionary versus non-discretionary distinction is no longer controlling and, to the extent that the government relies on that distinction for its jurisdictional argument, the Majority concludes correctly that the government's argument is misplaced. Nevertheless, I dissent because I agree with the government that we lack jurisdiction over the petition based on our recent *en banc* decision in *Patel*, which interpreted the scope of the jurisdictional-stripping provision in § 1252(a)(2)(B)(i).

We held in *Patel* that § 1252(a)(2)(B)(i) precluded our review of "any judgment regarding the granting of relief under [8 U.S.C. §§] 1182(h), 1182(i), 1229b, 1229c, or 1255 except to the extent that such review involves constitutional claims or questions of law." *Id.* at 1262 (alteration in original) (quotation omitted). And we explained that the phrase "any judgment" in § 1252(a)(2)(B)(i) was "a

10

broad[] term that encompasses both discretionary and non-discretionary determinations. It provides a blanket prohibition on review of judgments relating to [the] five [enumerated] categories" of relief. *Id.* at 1277–78. Thus, we explained that "§ 1252(a)(2)(B)(i) precludes us from reviewing 'whatever kind' of judgment 'relating to' the granting of relief under the five enumerated sections," including eligibility requirements. *Id.* at 1274, 1283.

The "exceptional and extremely unusual hardship" factor is an eligibility requirement for cancellation of removal, 8 U.S.C. § 1129b(1)(D), and the determination of whether an alien has met that requirement is a judgment related to one on the enumerated five categories of relief set forth in § 1252(a)(2)(B)(i). Accordingly, § 1252(a)(2)(B)(i) precludes us from reviewing eligibility determinations for purposes of cancellation of removal. *Patel*, 971 F.3d at 1276, 1279, 1283. Indeed, in *Patel*, we used the "exceptional and extremely unusual hardship" requirement for cancellation of removal as an example of the eligibility determinations that we lacked jurisdiction to review. *Id.* at 1278–80. Accordingly, in keeping with *Patel*, we may review the BIA's decision only if Cuauhtenango-Alvarado raises a colorable constitutional claim or a question of law. *See* 8 U.S.C. § 1252(a)(2)(D).

The Majority concludes that Cuauhtenango-Alvarado's petition presents the question of whether or not a given set of facts amount to "exceptional or unusual

11

hardship" is a mixed question of law and fact that falls within the purview of § 1252(a)(2)(D).  It does not.  Although the Majority couches her claim as a legal question, Cuauhtenango-Alvarado alleges that her situation is similar to that of several other cases in which the requisite level of hardship was found.  In other words, she merely challenges the BIA's factual findings pertaining to her hardship determination and the weighing of the evidence in her case.  Her arguments are precisely the type of eligibility determination challenge that we deemed precluded by § 1252(a)(2)(B)(i) in *Patel*.  Therefore, we lack jurisdiction over her petition, and it should be dismissed pursuant to § 1252(a)(2)(B)(i).[3]  *Patel*, 971 F.3d at

---

[3] I am not alone in this conclusion.  Both pre- and post-*Patel*, we have without fail concluded that review of whether the "exceptional and extremely unusual hardship requirement" is barred by § 1252(a)(2)(b)(i).  *See Martinez v. U.S. Att'y Gen.*, 446 F.3d 1219, 1221–22 (11th Cir. 2006) (holding pre-*Patel* that "§ 1252(a)(2)(D) does not restore the federal courts' ability to review the BIA's § 1229b(b)(1)(D) 'exceptional and extremely unusual hardship' determinations"); *Salazar-Yanez v. U.S. Att'y Gen.*, 803 F. App'x 383, 384–85 (11th Cir. 2020) (concluding pre-*Patel* that we lacked jurisdiction over the petitioner's "arguments that the BIA failed to consider the relevant facts 'in the aggregate' and apply its precedent in *Matter of Recinas*, 23 I & N Dec. 467 (B.I.A. 2002),"—one of the identical arguments Cuauhtenango-Alvarado asserts in this case—because those arguments "merely challenge the BIA's factual findings pertaining to its hardship determination"); *Guerrero-Cruz v. U.S. Att'y Gen.*, 839 F. App'x 325, 327–28 (11th Cir. 2020) (holding post-*Patel* that we lacked jurisdiction to consider petitioner's claim that he had "demonstrated sufficient hardship based on his children's ages, limited Spanish proficiency, their mother's health concerns, and the decreased standard of living they would experience if moved to Mexico" because although couched as a legal question, the petitioner "in effect challenge[d] the weight given to the pertinent hardship factors and the adequacy of the IJ's and BIA's explanations"); *Lara v. U.S. Att'y Gen.*, 826 F. App'x 869, 871 (11th Cir. 2020) (holding that we lacked jurisdiction over alien's petition challenging determination that she failed to show exceptional and extremely unusual hardship because "[w]e held in *Patel* that § 1252(a)(2)(B)(i) bars review of "all eligibility determinations for the five enumerated categories of discretionary relief." 971 F.3d at 1279. And "exceptional and extremely unusual hardship" is one of the eligibility requirements for cancellation of removal. 8 U.S.C. § 1229b(b)(1)(D); *see Patel*, 971 F.3d at 1278-80 (using that standard in its discussion of threshold eligibility determinations for discretionary relief)."); *Francisco-Pedro v. U.S. Att'y Gen.*, 838 F. App'x 385, 387 (11th Cir.

1276, 1279, 1283; *see also Alhuay v. U.S. Att'y Gen.*, 661 F.3d 534, 549–50 (11th

Cir. 2011) (holding that "§ 1252(a)(2)(D) does not restore our jurisdiction in cases

where the BIA affirms an IJ's order due to the petitioner's failure to demonstrate

the requisite hardship" because such challenges do not raise colorable

constitutional claims or questions of law).  Consequently, I respectfully dissent.

---

2020) ("Section 1252(a)(2)(D) does not restore our jurisdiction where the Board affirms an Immigration Judge's order due to the petitioner's failure to demonstrate the requisite hardship." (quotations omitted)); *see also Andablo Guiterrez v. U.S. Att'y Gen.*, 828 F. App'x 599, 601-02 (11th Cir. 2020) (holding that post-*Patel*, "even non-discretionary decisions, such as determinations of the physical presence requirement, are shielded from judicial review").  While the majority of these cases are not published and therefore non-binding, they provide significant persuasive authority for the conclusion that we lack jurisdiction over the petition at hand.